No. 16,449.

PEOPLE EX REL. ZIMMERMAN v. HERDER.
(223 P. [2d] 197)

Decided October 9, 1950.

Mr. JOHN W. METZGER, Attorney General, Mr. ALLEN MOORE, Deputy, Mr. FRANK A. WACHOB, Assistant, Mr. ROBERT BUGDANOWITZ, Assistant, for the people.

Mr. H. W. SEAMAN, Mr. CONRAD L. BALL, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE question presented in this action is whether or not the State of Colorado, through the superintendent of the state hospital, can recover for the maintenance of an insane pauper son from the inmate's father, or next of kin.

Relying on section 16, chapter 105, '35 C.S.A., as amended by chapter 170, S.L. '45, the Superintendent of the Colorado State Hospital instituted this action to recover from defendant in error, as the father and next of kin of Reuben Herder, an inmate duly and regularly committed to the hospital, expenses of his maintenance at the rate of $30 per month from March 23, 1945 to August 9, 1949, approximating $1,943.

Omitting the formal parts, the substance of the complaint is to the effect that the inmate, Reuben Herder, is a pauper; that defendant is the father and nearest relative of said inmate and is financially able to provide for the support and maintenance of his lunatic son at the Colorado State Hospital, and has failed to do so; that the inmate, Reuben Herder, was, on the 23rd day of February, 1944, duly adjudged a mental incompetent

and committed to the state hospital by the county court of Larimer county; that in the matter of the adjudication, it was further determined that the said Reuben Herder has no estate out of which the expense of his care and maintenance at the hospital could be paid; that he was regularly admitted to the state hospital on or about April 24, 1944, and escaped therefrom to be apprehended and returned on or about May 15, 1944, and remained in the hospital until August 9, 1949, when he again escaped and has at all times since been at large; that on November 9, 1948, and March 2, 1949, the superintendent of the hospital notified the judge of the county court of Larimer county that the defendant, Lewis Herder, had failed and refused to contribute to the support of his pauper son; that the judge of the county court failed and neglected to cause any investigation to be made of the financial condition of the father, Lewis Herder, or of any persons legally responsible for the support and maintenance of the incompetent pauper; that upon information obtained from an independent investigation, plaintiff alleges that the father, Lewis Herder, is possessed of real and personal property of the value of many thousands of dollars and is in all respects financially able to pay for the reasonable support and maintenance of his mentally incompetent pauper son at the state hospital, and prays for judgment accordingly.

Defendant filed motion to dismiss on the ground that the complaint failed to state a claim against the defendant upon which relief could be granted. Plaintiff, on motion, was granted leave to amend, and did file an amended complaint. The original motion to dismiss was considered as applying to the amended complaint and after both parties filed memorandum briefs, the court, on December 5, 1949, sustained the motion and ordered the cause dismissed. Error is assigned to this final order of dismissal.

In substance, the error, of which complaint is made, is that the ruling of the trial court in dismissing plaintiff's

complaint is contrary to law. Consideration of this specification can be more easily effected by reference to the finding of the trial court, which is as follows:

"The first point raised, as to whether the committed person is a pauper, seems to be supplied in the amended complaint.

"The second point—that the State has not followed the law as provided in Sections 28 to 33—is well taken, if this action is to be governed by those sections. Those sections, now compiled in Article 3 of Chapter 105, C.S.A., have in the main been carried forward from the General Laws, and were originally adopted before the State Hospital was available. They do provide for payment by the county in the first instance, presentation and repayment by the State, and after payment of *any such account*' (to the county), action will lie in behalf of the State.

"But the amended complaint as drawn is based upon Section 1, Chapter 107 Sess. Laws 1945, amending Section 16, Chapter 105, C.S.A. And if the amended complaint states a claim for relief that can be granted, it must be under that amended Section 16. That such is the intent of the Attorney General will appear from his opinion and direction to all County Judges, dated November 5, 1949, on the subject of Liability for Support of Insane and Feeble Minded Persons.

"The fact that the directory procedure of investigation and report by the County Judge failed, through no fault of the plaintiff or Asylum Superintendent, should not thwart a recovery, if the relative is in fact liable.

"Ruling on the Motion to Dismiss would seem to depend upon (1) whether amended Sec. 16 gives or preserves a right of action by the State against the father of the patient, and (2) whether 'such measures to collect' 'are provided by law.' In these respects there remains a doubt in my mind.

"Sec. 15, Chap. 116, S.L. 1915 (compiled as Sec. 16, Chap. 105 C.S.A.) provides, *'Nothing in this chapter*

shall be construed, etc.', and any moneys 'expended by county' may be recovered, etc. But under Sec. 8 (Sec. 9, Chap. 105 C.S.A.) no county would have expended any such where commitment is made *to the State Hospital,* for no account could be presented to the county and audited for treatment in the State Asylum. Thus that provision in that section giving the county a right to recover would seem not to apply to patients in the State Asylum.

"It is noted that the preservation of the Liability of relatives by Sec. 15, Chap. 118 S.L. 1915, is that 'nothing in *this chapter* (act) shall be so construed as to exempt the relatives from liability, etc.' Obviously that provision could not affect a later act, for example, the initiated act adopted November 7, 1916, and published in 1917 SL at Page 273, and later compiled in part as Sections 42 and 43, Chap. 105, C.S.A. 1935.

"The later statute—Sections 42 and 43—makes all persons committed to the State Hospital *'wards* of the state,' to be cared for by the state through the Board of Corrections (Division of Public Welfare), and repeals all conflicting *acts and parts of acts.* Thus, becoming *wards* of the state, is liability for their support thereby limited to the state and their own property and estate? Such construction is supported by additional levies provided by the 1917 laws and subsequent appropriations by legislatures. The opinion of the Attorney General, supra, seems to interpret *'wards* of the state' as meaning that the state is charged with their support.

"The prohibition against construing *'this chapter* (No. 118 *of of* 1915 S.L.) so as to, etc.' was compiled in the 1935 Annotated Statutes as 'nothing in *this Article* (Art. 1 of Chap. 195, C.S.A.) which is later approved and adopted as official by Chap. 120, S.L. 1937. Again it is obvious that could not affect the Sections 42 and 43 in another Article 4, of Chap. 105, C.S.A.

"And by the 1945 Amendment of Sec. 16, Chap. 105, C.S.A. the provision remains 'nothing in this *Article,*

etc.' Possibly this was an oversight by the legislature, 'but it is not for us to say.' See Joyce v. People 81 C. 306, 309.

"Thus does this action lie against the father of the patient? And is there any recovery 'provided by law?'

"In any event, it would seem that any recovery would be limited to time following the effective date of the 1945 amendment—March 23, 1945.

"Counsel may enlighten the Court further by written briefs, or memoranda, if they desire to do so.

"Ruling will not be made before December 5, 1949, as indicated above.

"Dated November 23, 1949."

Thereafter, on the 5th day of December, 1949, the court filed memorandum of final ruling, as follows:

"Reference is had to Memorandum filed in the above cause September 30, 1949, which is now adopted as explanatory of this present ruling, sustaining defendant's Motion to Dismiss.

"The vital question suggested—May the State recover from the parent for support and maintenance of a pauper son who is duly adjudged insane and committed and confined in the Colorado State Hospital?—must be answered in the negative.

"The initiated act adopted November 7, 1916 (Sess. Laws 1917, Chapter 79), making all persons who are adjudged insane and committed to the Insane Asylum (State Hospital) wards of the State, and repealing all acts and parts of acts in conflict therewith, in such cases removed any general liability of relatives theretofore provided by General Statutes, Sec. 2529 (Sec. 1, Chap. 124, C.S.A. 1935). It seems apparent that the people intended, where an insane person, by adjudication and commitment, is removed from the control and authority of parents or local authorities, the support and maintenance of said person as a ward of the State should be a State charge. In that respect the general provision

of liability of individual relatives would be 'in conflict,' and to that extent repealed."

A summary of the argument of defendant in error is to the effect that, the statutes of the State of Colorado do not give or provide any cause of action to the State of Colorado on the facts stated in plaintiff's amended complaint. It is generally contended that, since the initiated Act of 1917, persons adjudged to be insane are made wards of the State of Colorado and as such are to be cared for at the expense of the state. That Act is now sections 42 and 43, chapter 105, '35 C.S.A., which are as follows:

"42. All persons who have been or may hereafter be adjudged to be insane, are hereby made wards of the state of Colorado; and it is hereby made the duty of the Colorado board of corrections to admit into the Colorado insane asylum, or to provide and care for elsewhere, all insane persons who may be committed to the Colorado insane asylum. [Section 1 of initiated act, adopted November 7, 1916; L. '17, P. 273, §1; C.L., §578.]

"43. The statutes of this state shall not be construed to limit the number of insane persons to be kept in any building at the insane asylum; and the Colorado board of corrections shall have no power to make or enforce any rule or by-law which will limit the number of insane persons to be cared for by the state, or that will deny to any insane person the care furnished other insane persons by the state, or that will in any way abridge the purposes of this section and the preceding section. [Section 2 of initiated act, adopted November 7, 1916; L. '17, P. 273, §2; C.L., §579.]"

It is further contended that there is no provision in the law under which the state on relation of its superintendent of the hospital, can maintain a direct action as is here attempted.

The general tenor of the trial court's finding is to the effect that the initiated Act of 1916, appearing in S.L. '17, chapter 79, making all persons who are adjudged in-

sane and committed to the insane asylum, wards of the state, repealed all acts and parts of acts in conflict therewith, and removed any general liability of relatives theretofore provided by statute; that the support and maintenance of such persons as wards of the state should be a state charge; and in that respect, the general provisions of liability of individual relatives would be "in conflict," and to that extent repealed. It is our opinion that the trial court misapprehended or overlooked the full force and effect of the latest expression of our legislature to be found as chapter 170, S.L. '45, which is an amendment of the original section 16 of chapter 105, '35 C.S.A., and is as follows:

"An Act

"To Amend Section 16, Chapter 105, 1935 Colorado Statutes Annotated Concerning Relatives not Exempt from Liability.

"Be It Enacted by the General Assembly of the State of Colorado:

"Section 1. Section 16, Chapter 105, 1935 Statutes Annotated, is hereby amended to read as follows:

"Section 16. Nothing in this article shall be so construed as to exempt the relatives and next of kin of any insane or mentally incompetent pauper from their liability for his or her support; and all moneys expended by any county for the maintenance of any such insane or mentally incompetent person, under the provisions of this article, may be recovered of the person or persons who are or may be liable by law for his or her maintenance. If the person or persons liable, by law for the support or maintenance of any insane or mentally incompetent pauper, do not contribute to his or her support or maintenance at the Colorado State Hospital, the superintendent of the Colorado State Hospital shall notify the county judge of the county from which said pauper was committed to the Colorado State Hospital; then it shall be the duty of said county judge to cause a thorough investigation to be made of the financial

condition of said persons legally responsible for his or her support or maintenance. If said county judge shall be satisfied that the person or persons liable by law for the support or maintenance of said pauper are unable financially to contribute to his or her support or maintenance at the Colorado State Hospital, then it shall be the duty of the county judge to notify the superintendent of the Colorado State Hospital to that effect. If it shall appear to said judge that the person or persons liable by law for the support or maintenance of said pauper are financially able to contribute to his or her support or maintenance, then it shall be the duty of said judge to notify the Superintendent of the Colorado State Hospital who shall take such measures to collect for the support or maintenance of said pauper as are provided by law.

"Section 2. All acts and parts of acts in conflict herewith are expressly repealed."

In view of the fact that the legislature in 1945 did take direct action on the question here involved concerning relatives not exempt from liability, there can be no doubt that it considered the existence of uncertainties and inequities present in the then existing statutes. To correct that situation, the legislature clearly expressed its intent in its 1945 Act, supra, and provided the remedy and procedure to be followed in such cases. It expressly provided that, "All acts or parts of acts in conflict herewith," were expressly repealed. That it was not free to enact such a measure, and even repeal the conflicting part of the initiated measure, cannot be successfully contended. *In Re Senate Resolution,* 54 Colo. 262, 130 Pac. 333.

The 1917 initiated measure, sections 42 and 43, supra, made lunatics wards of the state, and if the act can be so construed as to mean that the state must provide for all lunatics at state expense regardless of their estates, or the ability of their next of kin to pay; then it is in direct conflict with the latest expression of our legislature in the 1945 Act, supra, which provides plainly that

the next of kin, if able, must pay for the care of an insane pauper.

The 1945 Act clearly provides the procedure leading up to collection for maintenance. There is no record denial of the allegations of the amended complaint that the initial procedure was followed by the county court, by which the subject was committed, being twice notified of the failure of defendant to provide for the maintenance of his pauper son. It is further undenied that the county court failed or neglected to make the investigation as required by the statute, and, as properly determined by the trial court, that when such directory procedure of investigation and report by the county judge failed through no fault of plaintiff, then a recovery should not be thwarted if the relative is liable.

There also is no record denial of the allegations of the complaint to the effect that defendant, father of the pauper inmate, is financially able to contribute to the support and maintenance of his pauper son, and it is clearly stated in the Act that the superintendent of the hospital "shall" take such measures to collect for the support or maintenance of said pauper as is provided by law. Further, there is no denial in the present case that the defendant father is the first in line of statutory liability for such support.

In answer to the contention of defendant in error that the superintendent must proceed "as provided by law," and that he has not done so, we feel compelled to hold that, in view of the wording of the statute upon which this complaint is grounded, the arguments presented are not applicable.

It is idle to say that where, under a statute, a debt exists to the state and statutory liability is fixed, there must be some particular statute under which an action in its behalf can be maintained. By virtue of its sovereign capacity, the state possesses the right, independent of any statutory provision, to institute and maintain such an action in any of its courts, and is free

466

to adopt any remedy or legal measure which would be available to a private litigant. This right extends to any of its sovereign agencies.

■ We thus conclude that plaintiff in error not only has the right to institute this action, but it is made its clear duty to do so; that under the statute involved, liability on the part of defendant in error attached, and dismissal of the complaint was error.

The judgment is therefore reversed, and the cause remanded with instructions to reinstate the amended complaint and proceed to trial in accordance with the views herein expressed.

Mr. Justice Stone dissents.

Mr. Justice Alter concurs in the result.