## No. 16,860.

STATE EX REL. ZIMMERMAN *v.* PETZOLDT ET AL.

(246 P. [2d] 909)

Decided July 7, 1952.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. FRANK A. WACHOB, Assistant, for plaintiff in error.

Mr. C. CHARLES BUCHLER, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

MARY Winder Petzoldt, on January 23, 1947, was committed to, and the following day entered, the Colorado State Hospital as an insane person from Arapahoe county.

April 13, 1950, also upon the husband's petition, Joseph

W. Esch was appointed and duly qualified as conservator of her estate, the mental incompetent in the meantime having become entitled to an interest in an estate being administered in the probate court of Osborne county, Kansas.

May 24, 1950, the Colorado State Hospital, having been notified by the conservator of his appointment, filed against the mental incompetent's estate in Arapahoe county a claim for care and maintenance of the mental incompetent from October 1, 1947, to April 30, 1950 (less credits), in the amount of $440.00. December 8, 1951, the hospital filed its amended claim for the period October 1, 1947 to November 30, 1951 (less credits), in the amount of $1,010.00. Payment of this amended claim was refused by the conservator. Both claims omitted charges for the period of approximately one and one-third years, between February 1, 1948 and May 20, 1949, which apparently had been paid by the next of kin.

At the hearing on the claim, the conservator admitted liability for $440.00, but denied liability for any part of the state's claim, either matured or unmatured, which was not filed within six months after opening of the estate proceedings on April 13, 1950. The county court adopted the contention of the conservator, and decreed, "That the claim of the State of Colorado, upon the behalf of the Colorado State Hospital, filed in this Estate, amounting actually to the sum of $570.00, is hereby disallowed, and that any future claim or claims by the State of Colorado, or its agency, the Colorado State Hospital, for care and maintenance of the said Mental Incompetent, against the above-entitled estate, by virtue of the findings and rulings herein made, will be disallowed." The State Hospital brings the case here by writ of error, seeking a reversal of that judgment.

The judge of the county court apparently relied upon the provisions of section 195 (as amended by S.L. '49, chapter 254, page 770, section 17) and section 207, chapter 176, '35 C.S.A.

■ Section 195, supra, setting up the five classes of claims to be filed in an estate, applies to the estate of a deceased person and, standing alone, clearly is not applicable to a conservatorship. The opening sentence of the section reads, "All demands against *the estate of any testator or intestate shall be divided into classes in manner following, to-wit:.*"

The legislature recognized the inapplicability of section 195 to conservatorships when it enacted the following section 196, chapter 176, '35 C.S.A., especially applying to that subject: *"Claims against the estate of any mental incompetent may be allowed and classified in the same manner as against estates of deceased persons and otherwise governed by the same rules,' so far as applicable;* provided, that in case such mental incompetent be adjudged to be restored to reason within one year after granting of letters, claims filed and not allowed, and claims not filed, shall not be barred by reason of such failure to have the same filed and allowed. [L. '03, p. 517, §122; R.S. '08, §7207; C.L. §5332.]" (Italics supplied.)

It is evident that the paragraphs concerning claims of the third class (relating to "all funeral expenses, physicians' bills, and other expenses of decedent's last illness, etc."), and of the fourth class (relating to widows' and orphans' allowances) are not applicable in a conservatorship.

It also is to be noted that whereas the provisions of section 195 are mandatory, those of section 196 are merely permissive, the word "shall" being used in section 195 and "may" in section 196.

The trial court also seems to have relied upon section 207, chapter 176, '35 C.S.A. (as amended by S.L. '41, chapter 235, page 912, section 24, and 207A, and S.L. '49, chapter 254, page 765, section 4), providing that all claims, including unmatured and contingent claims, shall be filed within six months of the issuance of letters; and stress is laid on the fact that the claim of the State Hospital, in so far as expenses for the future housing and

treatment of the mental incompetent are involved, would fall under the classification of unmatured and contingent claims. Provision is then made (S.L. '41, page 912, section 24) to "withhold so much of the estate as will be sufficient to pay the claim in full in the event that such claim shall become definite and fixed in amount or may determine the reasonable value of such claim on the basis of normal expectancy * * *." An example of an unmatured claim would be a promissory note of decedent, payable at some time in the future from the date of filing it in the estate. An illustration of a contingent claim is that, where decedent had signed as a guarantor on a note of which another person was the maker. But in the case of a mental incompetent, confined in the state hospital, there is no basis upon which to estimate future claims of the state institution against the estate. Such incompetent's medical costs may vary from month to month, and even ordinary living costs may vary from time to time. We are of the opinion that section 9, chapter 105, '35 C.S.A., must be considered as relevant in the situation in the instant case, the pertinent portion of which reads as follows: " * * * it shall be the duty of the county court * * * if and when it shall be shown to the court that said insane person or mental incompetent has real or personal estate, to appoint some fit person to be conservator of the estate of the patient and if any patient committed under this article has any estate in the hands of his conservator, an account of his keeping shall be rendered by the proper authorities of the asylum or hospital * * * to which he has been committed, or where he has been treated, to the county court by which said commitment was ordered, and upon further order of said court the conservator shall pay said account out of any money in his hands belonging to said estate, and which may be lawfully applied; provided, however, that when any county court shall appoint a conservator of any such estate, the court shall, in writing, at once notify the superintendent or other executive officer of the institution

to which such patient has been committed, of the fact of the appointment of such conservator giving the name and address of such conservator. * * *"

The purpose of having creditors file claims is that the fiduciary of the estate may be properly advised of them. It is to be observed from section 9, supra, that the statute provides that the county court shall notify the State Hospital of the existence of an estate of a mental incompetent confined in the hospital as soon as it is opened. The county court having jurisdiction of the estate and the conservator are already advised of the fact that there are present and possible future claims that will arise from the state hospital.

■ That the legislature did not intend to make wholly applicable to conservatorships the strict rules relating to the classification and filing of claims against estates of decedents, as set forth in sections 195 and 207, supra, is also evident from the enactment of section 227, chapter 176, '35 C.S.A. (as amended by S.L. '47, chapter 341, page 941, section 9), the pertinent portion of which reads as follows: "(b) In case of the discharge of any guardian upon his ward's reaching his majority, or the discharge of any conservator upon his ward's being restored to mental competency, such notice of final settlement shall not be published but shall be served upon such ward, together with a report of the accounts and actions of such guardian or conservator, after the removal of the disability, personally, or in such manner as the court may direct, or at least four weeks prior to the day set for such final settlement, and in the case of the death of any minor under guardianship or of any mentally incompetent person under conservatorship, such notice shall be served as aforesaid upon the administrator or executor of the estate of such deceased person; *provided further, that the administration of the estate of a mental incompetent who has been committed to the Colorado State Hospital shall not be closed if said estate*

*is solvent until there is filed in such estate a certificate from the Superintendent of the Colorado State Hospital that all claims of the State for the care of such mental incompetent have been paid.*"   (Italics supplied.)

We believe the foregoing section must be interpreted as meaning that before a conservatorship can be closed, all just claims of the Colorado State Hospital against it shall be paid.  This section makes inapplicable the provisions in sections 195 and 207, chapter 176, '35 C.S.A., supra, that might seem to conflict with it.

We conclude that the trial court was in error in its judgment in disallowing the claims of the State Hospital for housing and treatment of the mental incompetent on the ground that the State Hospital had not complied with sections 195 and 207, chapter 176, '35 C.S.A., supra. Section 195, supra, standing alone, is clearly inapplicable; and section 207, supra, must be read and harmonized in connection with sections 196 and 227, chapter 176, and section 9, chapter 105, '35 C.S.A., supra.

The judgment of the trial court is accordingly reversed.