No. 21990.

IN THE MATTER OF THE ESTATE OF EDNA O. RANDALL, DE-
CEASED; EARL L. DRAKE, AS EXECUTOR OF THE ESTATE OF
EDNA O. RANDALL, DECEASED *v.* COLORADO STATE
HOSPITAL.
(441 P.2d 153)

Decided May 20, 1968. Rehearing denied June 17, 1968.

1

2

SOUTHARD and SOUTHARD, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Richard D. Robb, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

Two questions of public importance are presented by this writ of error:

I.

Does the nonclaim statute of Colorado, C.R.S. 1963, 153-12-12(1), bar a claim of the state of Colorado not filed within the time period prescribed?

II.

Must the state of Colorado comply with the procedure set forth in C.R.S. 1963, 71-1-15, before liability for the care of an indigent mental incompetent may be asserted against one of the relatives liable by law for such maintenance?

We will discuss the questions in that order after a brief recital of the stipulated facts.

In June, 1937, Elizabeth Drake, then a minor, was adjudged incompetent and committed to the Colorado State Hospital where she has been confined ever since. Her father and mother were William and Edna Drake. William died in 1944, and the mother, Edna, married C. H. Randall in 1958. In 1960 Edna was again widowed. She died on February 11, 1963.

On February 27, 1963, the executor of Edna Randall's estate published the statutory notice to creditors setting September 3, 1963 as the last day for filing claims against the estate. The executor filed his final report with the court on September 6, 1963, and statutory notice of final settlement was published setting October 14, 1963 as the last day to file objections to the final report. On September 19, 1963 the Colorado State Hospital filed a claim against the estate of Edna Randall

for the care and maintenance of Elizabeth. The claim — sixteen days late — covered the period of twenty-six years from the date of Elizabeth's admission to the date of Edna Randall's death.

No payment for Elizabeth's care and maintenance at the Colorado State Hospital was ever made by Elizabeth's father in his lifetime, or by her mother up to the time of her death, and this fact was not certified to the committing court. Equally important to one of the questions raised herein is that the superintendent of the Colorado State Hospital did not seek to determine in the committing court whether Elizabeth's father or mother were able financially to contribute to Elizabeth's support and maintenance in the hospital.

In ruling on the hospital's claim, the district court of Weld County held that the sovereign state of Colorado, through which the Colorado State Hospital was organized and being operated, is not bound by the time limitations for filing claims set forth in the nonclaim statute. The trial court further held that although the superintendent of the Colorado State Hospital did not petition the committing court for a determination of the liability and the financial ability of Elizabeth's mother to contribute to the care and maintenance of Elizabeth, such failure did not prevent recovery; it stated in its ruling that, "said hospital is free to adopt any remedy or legal measure which is available to it as provided by law."

I.

On the first question whether the claim of the Colorado State Hospital is barred — we hold that it is. In doing so we are fully cognizant of *State v. Estate of Griffith*, 130 Colo. 312, 275 P.2d 945; nevertheless, we hold that insofar as the instant opinion is inconsistent with the language contained in *Griffith* which declares the rule of law the same both as to a nonclaim statute and a statute of limitations, we expressly overrule the *Griffith* holding.

The statute here under consideration, C.R.S. 1963, 153-12-12(1), provides in pertinent part as follows:

"All claims, including unmatured and contingent claims, shall be filed on or before the date fixed in the notice to creditors as the last date for filing claims, and if not so filed, shall be forever barred against said estate * * *; wherever it may be necessary to preserve or protect the estate for the benefit of persons in interest, the personal representative may pay any tax, assessment or encumbrance without the filing of a claim * * *."

The wording of the section decreeing that claims "if not so filed, shall be forever barred" is not the language of a statute of limitations. The verbiage in the *Griffith* case, in failing to distinguish between a nonclaim statute and the statute of limitations and classifying the two together, was erroneous. The weight of authority at the time of the *Griffith* decision, and now, is that a sovereign or its subdivisions as a claimant is subject to the same limitations for filing a claim as any other creditor who may make a claim against the estate of a decedent. *Bahr v. Zahm*, 219 Ind. 297, 37 N.E.2d 942; *In re Estate of Ashing*, 250 Iowa 259, 93 N.W.2d 587; *In re Estate of Dockham*, 108 N.H. 80, 227 A.2d 774; *Reith v. County of Mountrail*, 104 N.W.2d 667 (N.D.); *State v. Bower*, 362 P.2d 814 (Wyo.); Annot., 34 A.L.R.2d 1003-14.

The rationale for this distinction is that while a nonclaim statute appears to be in the nature of a statute of limitations, it is clearly not such. A nonclaim statute operates to deprive a court of jurisdiction. The personal representative of an estate can neither waive it nor toll it. *Crowley v. Farmers State Bank*, 109 Colo. 146, 123 P.2d 407; *Haley v. Austin*, 74 Colo. 571, 223 P. 43. This rule has been modified only for reasons specified in C.R.S. 1963, 153-12-13. A nonclaim statute imposes a condition precedent to the enforcement of a right of action; that is to say, the claim must be presented within the time set in the notice to creditors or

be *barred*. A statute of limitations, on the other hand, does not bar the right of action but only the remedy. *Rogers v. Rogers*, 96 Colo. 473, 44 P.2d 909. Such a statute may be tolled. Such a statute is a defense which is waived if not affirmatively pleaded. R.C.P. Colo. 8.

The nonclaim statute providing for an absolute bar of a claim filed late is intended to expedite the orderly and exact settlement of estates of decedents. Otherwise,

"* * * the settlement of an estate might be deferred indefinitely, and the heirs and legatees, the rightful owners of the property of the estate, or beneficiaries of the will of the decedent, [will be] kept out of the enjoyment of their possessions and deprived of the benefits secured to them by the laws of the state for such unreasonable time as to practically deprive them of their property. No such possibility should be brought about by the failure of government officials to comply with the requirements of the statute." *Brooks v. Federal Land Bank*, 106 Fla. 412, 143 So. 749.

In Wyoming the case of *State v. Bower, supra,* clearly enunciated the general rule. Involved therein was a late-filed claim filed by the state of Wyoming against a decedent's estate for the cost of care and maintenance of the deceased while a patient in a state hospital. In holding the claim was barred, the Wyoming Supreme Court said:

"The question presented here is not whether the estate of a deceased person can be held liable by the State for the cost of care and maintenance of the deceased while a patient at the State hospital. It is whether the liability for that cost may be satisfied from the assets of the deceased without the State's observing the procedural conditions precedent which have been imposed by the State's own legislature. Had it been the legislative purpose to exempt the State from compliance with those precedent procedures, it might easily have done so. The failure to except the State from the barring pro-

vision of the statute makes necessary the plain implication that the lawmaking arm of the State's government did not intend that the State should be relieved of the requirement. * * * If the legislature did not see fit to say the door should be left open indefinitely for the State to come forward with its legitimate claim against the estate, it would be highly improper for this court to read into its statute an exception which the enactment did not see fit to incorporate within it."

In overruling our decision in the *Griffith* case, we wish to make it clearly understood that it is not intended in this decision to affect the ruling in *Ray v. State*, 123 Colo. 144, 226 P.2d 804, cited in the *Griffith* decision. The late claim involved in *Ray* was for income taxes owed by the deceased. We make the distinction concerning taxes because of the provision in the statute itself that "the personal representative may pay any tax assessment or encumbrance without the filing of a claim * * *." The specific reference for the payment of taxes without the necessity of filing a claim at all is an express intention by the legislature that taxes are not included among the claims requiring timely presentation for payment in estates. In the *Ray* case we held only that an income tax claim was not barred even though presented late because under the statute itself it need not be filed at all. See *Liebhardt v. Department of Revenue*, 123 Colo. 369, 229 P.2d 655.

II.

Although our ruling that the late claim is barred would be dispositive of this case, nevertheless the second question is of notable importance, because even though had the claim been timely filed it still could not have been allowed by the court under the stipulated facts.

The imposition of liability upon relatives named in the statute for the costs of care and maintenance of mental incompetents confined in mental institutions is in derogation of the common law. At common law it was the rule that in the absence of express contract or

fraud, public authorities could not recover either from the person confined, from his estate, or from those under a common law duty to support him, the expenses incurred on account of the committed patient. *In re Hutcherson's Guardianship Estate,* 239 Mo. App. 801, 199 S.W.2d 899; *In re Guardianship of Ochsner,* 166 Neb. 262, 88 N.W.2d 898; *Derouin v. State Department,* 262 Wis. 559, 55 N.W.2d 871; 44 C.J.S. *Insane Persons* § 75(b)(1).

 A statute, therefore, imposing liability where none previously existed, must be strictly construed in favor of the person against whom its provisions are intended to be applied. *McMillin v. State,* 158 Colo. 183, 405 P.2d 672; *Marzec v. Fremont County School District No. 2,* 142 Colo. 83, 349 P.2d 699; *Stowell v. People,* 104 Colo. 255, 90 P.2d 520.

 For the estate of Edna Randall to be liable for the care of the daughter Elizabeth, the claim would have to be one that could have been asserted against Edna in her lifetime. Liability of the next of kin attaches under the provisions of C.R.S. 1963, 71-1-15, as follows: "(1) Nothing in sections 71-1-1 to 71-1-18 shall be so construed as to exempt the relatives and next of kin of any insane or mentally incompetent indigent person from their liability for his support. All moneys expended by any county for the maintenance of any such insane or mentally incompetent person, under the provisions of sections 71-1-1 to 71-1-18, may be recovered of the persons who are or may be liable by law for his maintenance. If the persons liable by law for the support or maintenance of any insane or mentally incompetent indigent person do not contribute to his support or maintenance at the Colorado state hospital, the superintendent of the Colorado state hospital shall notify the county judge of the county from which said patient was committed to the Colorado state hospital. Then it shall be the duty of said county judge to cause a thorough investigation to be made of the financial condition of

said persons legally responsible for his support or maintenance.

"(2) If said county judge shall be satisfied that the persons liable by law for the support or maintenance of said patient are unable financially to contribute to his support or maintenance at the Colorado state hospital, then it shall be the duty of the county judge to notify the superintendent of the Colorado state hospital to that effect. If it shall appear to said judge that the persons liable by law for the support or maintenance of said patient are financially able to contribute to his support or maintenance, then it shall be the duty of said judge to notify the superintendent of the Colorado state hospital, who shall take such measures to collect for the support or maintenance of said pauper as are provided by law."

Under the stipulated facts, no payment was ever made by Edna for the support of her daughter. This fact was not certified by the superintendent of the hospital to the committing court (then the county court) in any of the twenty-six years involved in her care. As a consequence, no determination was made in the committing court, as provided by statute, whether Edna was financially able to provide for the care and maintenance of her daughter. The provisions of the statute are quite explicit and unambiguous; they are not supererogatory. The provisions were enacted for a purpose, and in our view comport with the conception of due process necessary before liability can be asserted against the patient's next of kin.

The State Hospital has based its argument that strict adherence to the statute is not necessary because of *People ex rel. Zimmerman v. Herder,* 122 Colo. 456, 223 P.2d 197. While that case in rather broad and sweeping language would perhaps lead one to believe that action may be instituted without complying with the statute, the case does have distinguishing features not present in the one at bar. The court noted in *Herder* that the

superintendent did notify the county court, from which the indigent patient was committed, and noted further that the county judge failed or neglected to do his duty in making the investigation through no fault of the hospital superintendent. The court commented that when the county judge failed to make the investigation and to determine whether the patient's father was financially able to contribute to his support, it was "through no fault of the plaintiff." The case further takes cognizance of the fact that an investigation was made and that there was an undenied allegation that the father was financially able to contribute to the support of the patient. If the broad language in the *Herder* case is deemed to be authority for the proposition that section 71-1-15 has no force and effect and that its enactment was of no particular consequence in the collection of state hospital accounts from next of kin, then we expressly overrule the broad dictum in the *Herder* decision.

The judgment is reversed and the cause remanded with directions to disallow the claim.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE KELLEY dissent.

MR. JUSTICE GROVES not participating.