**PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation, Petitioner,**

v.

**Charlene N. BARNHILL, Respondent.**

**No. 82SC127.**

Supreme Court of Colorado, En Banc.

Nov. 5, 1984.

Rehearing Denied Dec. 10, 1984.

---

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Kenneth V. Reif, Denver, for petitioner.

The Law Offices of Shelley B. Don, Shelley B. Don, Bruce A. Lampert, Richard M. Goodman, Ronald M. Andersen, Denver, for respondent.

KIRSHBAUM, Justice.

Public Service Company of Colorado (Public Service Co.), defendant at trial, seeks certiorari review of a decision of the Colorado Court of Appeals upholding the trial court's judgment that plaintiff, Charlene Barnhill, was not barred by section 13–21–204, 6 C.R.S. (1973), from filing a wrongful death action against Public Service Co. some four years after the date of the incident causing such death. We affirm.

The pertinent facts are undisputed. On May 8, 1973, Everett Barnhill, decedent, and his brother, Ronald, attempted to trim a tree located on property owned by the Barnhills. An electric line owned by Public Service Co. hung approximately fifteen feet above the base of the tree. When the Barnhills lost control of a forty-foot aluminum ladder they were using, the ladder came in contact with the electrical line. Everett Barnhill was killed, and plaintiff, his widow, suffered a mental illness as a result of his death. Her mental illness continued at least until March of 1977, when she filed this wrongful death action.

On April 16, 1979, at the commencement of the trial, the trial court raised with counsel the issue of whether a personal representative should be appointed for plaintiff pursuant to C.R.C.P. 17(c).[1] The trial court

---

1. C.R.C.P. 17(c) provides:

 **Infants or Incompetent Persons.** Whenever an infant or incompetent person has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative, or such representative fails to act, he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or

indicated that it had been furnished with a letter from a psychiatrist who had examined plaintiff and who had concluded that, while plaintiff's mental illness persisted to some degree and might interfere with some aspects of her life, such illness would not affect her ability to assist her attorney in the litigation. The trial court then conducted proceedings in chambers concerning this issue, which proceedings were unreported, and ultimately ruled that no appointment under Rule 17(c) was necessary. The record contains no objection by Public Service Co. to that ruling.[2] At the conclusion of the trial, the jury returned special verdicts finding decedent thirty percent negligent and Public Service Co. seventy percent negligent.

Throughout the trial, Public Service Co. · maintained that the provisions of section 13–21–204, describing the time within which wrongful death actions should be filed, barred plaintiff's civil action. The trial court rejected this argument on the ground that the general disability statute, section 13–81–103, 6 C.R.S. (1973), tolled the provisions of section 13–21–204. Public Service Co. appealed this question to the Court of Appeals, together with arguments related to evidentiary rulings of the trial court and asserted deficiencies in certain instructions given to the jury. The Court of Appeals affirmed the judgment of the trial court. Public Service Co. then filed a petition for certiorari with this court seeking review of the Court of Appeals' conclusions that section 13–81–103 applies to the provisions of section 13–21–204 and that the trial court did not err in excluding certain evidence offered by Public Service

Co. Public Service Co.'s petition also asserts that plaintiff lacked standing to file her complaint in March of 1977—a challenge to the trial court's jurisdiction not previously raised.

## I

 Preliminarily, we must consider Public Service Co.'s assertion that plaintiff's mental illness deprived her of standing to file and maintain this action. To the extent this argument may be considered a challenge to the trial court's jurisdiction, it may, of course, be asserted at any time. *See, e.g., Denver Urban Renewal Authority v. Byrne,* 618 P.2d 1374 (Colo.1980). However, the argument in reality is simply that respondent lacked capacity to participate in the litigation. A sometimes fine but always critical distinction must be drawn between assertions that a plaintiff lacks standing to sue and assertions that a plaintiff is not able to sue because of some medical or physical impairment. In the former circumstance, no case or controversy exists for the exercise of judicial authority. *See Community Tele-Communications, Inc. v. Heather Corp.,* 677 P.2d 330 (Colo.1984); *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). In the latter situation, however, there is indeed a case or controversy, in the sense that the plaintiff has asserted injury to a legally protected interest, *Wimberly v. Ettenberg, supra,* but the plaintiff is for some reason disabled from effectively representing that interest.[3]

 When a party to litigation has standing to sue, but is mentally or physical-

---

incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person, provided, that in an action in rem it shall not be necessary to appoint a guardian ad litem for any unknown person who might be an infant or incompetent person.

2. Prior to the court's ruling regarding the special appointment under C.R.C.P. 17(c), the question arose concerning the participation of two attorneys who had represented respondent immediately after decedent's death, which attorneys had been subpoenaed by Public Service Co.

to testify. Respondent's attorney stated that the subpoenas were issued on the question of capacity, to which Public Service Co.'s attorney replied: "There is no issue of capacity." In its petition for certiorari, Public Service Co. states that "for tactical reasons," it did not question respondent's mental state at trial.

3. The allegations of respondent's complaint clearly satisfy the minimal requirements for establishing standing to litigate, as articulated by this court in *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977).

ly incapacitated to the extent of being unable to effectively represent those interests allegedly adversely affected, C.R.C.P. 17(c) provides for the appointment of a personal representative of such person as a procedural remedy for the difficulty. Public Service Co. at no time challenged the trial court's ruling that appointment of a personal representative for plaintiff pursuant to C.R.C.P. 17(c) was not warranted. It thereby abandoned any right it might have had to question respondent's competency to sue. *Christensen v. Hoover*, 643 P.2d 525 (Colo.1982); *Adler v. Adler*, 167 Colo. 145, 445 P.2d 906 (1968). Plaintiff, as the widow of the deceased, has been conferred standing to file a wrongful death action by the express terms of section 13–21–201, 6 C.R.S. (1973); the question of her competency to enforce such interest is not properly before this court.

## II

■ Public Service Co. argues that section 13–21–204, 6 C.R.S. (1973), is a "non-claim statute," and, therefore, is not subject to the tolling provision of the general disability statute, section 13–81–103, 6 C.R.S. (1973), in this case. We agree with the contrary conclusion of the Court of Appeals, and, therefore, reject this argument.

The term "non-claim statute" describes legislation which prohibits absolutely the initiation of litigation after a specific period of time. *In re Estate of Daigle*, 634 P.2d 71 (Colo.1981). Because its temporal provisions are, in effect, deemed conditions upon the existence of a particular right to seek redress, such a statute prohibits the initiation of litigation after the prescribed date and, therefore, is jurisdictional in effect. *In re Estate of Randall v. Colorado State Hospital*, 166 Colo. 1, 441 P.2d 153 (1968). Such self-contained statutes are not subject

to other legislative provisions which provide that in special circumstances the periods of time for filing actions defined by general statutes of limitations can be extended. *Sommermeyer v. Price*, 198 Colo. 548, 603 P.2d 135 (1979); *In re Estate of Randall, supra.*

In determining whether a particular legislative enactment is a non-claim statute, this court must examine with great care the precise language employed by the General Assembly. *In re Estate of Daigle, supra.* For example, in *Estate of Randall* and in *Sommermeyer*, wherein we ruled that the applicable versions of what is now codified as section 15–12–803(2), 6 C.R.S. (1973 & 1983 Supp.), were in fact non-claim statutes, barring claims of minors not timely filed in the probate court, we placed great emphasis upon the General Assembly's use of language which expressly barred claims not filed within the prescribed limits. The General Assembly's choice of language is particularly important in light of the fact that all statutes, non-claim or otherwise, which limit the temporal period within which aggrieved persons must initiate the judicial process have a common primary purpose—ensuring that litigation is commenced promptly to allow a defendant a full and fair opportunity to obtain important evidence and to develop a defense. *See State Board of Medical Examiners v. Jorgensen*, 198 Colo. 275, 599 P.2d 869 (1979); *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944). A secondary purpose common to all such statutes is the goal of encouraging a foreseeable end to the spectre of potential litigation which inevitably accompanies much conduct in society. *See* 51 Am.Jur.2d *Limitation of Actions* § 17 (1970). Thus, the distinguishing characteristics of non-claim statutes must be gleaned primarily from careful scrutiny of particular legislative language.[4]

---

4. Decisions from other jurisdictions considering the relationship between a particular general disability tolling statute and that jurisdiction's wrongful death statute predictably reach varied results on varied rationales. *See generally Annot.*, 85 A.L.R.3d 162 (1978). For example, in *Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222

(1972), the Massachusetts Supreme Court considered the interrelationships of statutes concerning wrongful death actions, intestate estates, survival, and limitations on tort actions in concluding that an administratrix, though not barred from pursuing an action for the wrongful death of her husband on behalf of her minor

Section 13–21–204 states as follows, in its entirety:

**Limitation of action.** All actions provided for by sections 13–21–201 to 13–21–203 shall be brought within two years from the commission of the alleged negligence resulting in the death for which suit is brought.

Considering the history of our distinction between non-claim statutes and statutes of limitations in the context of probate proceedings, *see Estate of Daigle, supra,* it may be inferred that the General Assembly was aware that the language it employed in encouraging rapid resolution of wrongful death claims was of importance. *See People v. Cooke,* 150 Colo. 52, 370 P.2d 896 (1962). It is of some significance that the very section is entitled "Limitation of action." *See People v. Friederich,* 67 Colo. 69, 185 P. 657 (1919). Of much greater significance, however, is the fact that the statute does not employ language indicating that failure to file a claim within the two-year period therein specified bars the claim, that such filing is a condition to the existence of the claim itself, or that failure to so file deprives courts of jurisdiction over such a claim. The presence of such language in section 15–12–803(2) led to our conclusion in *Estate of Randall, supra,* that that statute was a non-claim statute. On the basis of the language employed by the General Assembly here, we conclude that section 13–21–201 is not a non-claim statute. Therefore, it does not function as a jurisdictional bar to lawsuits filed after the conclusion of the two-year period from the date of the alleged negligent conduct.

Reliance by Public Service Co. on certain *dicta* contained in the decision of *Ritter v. Aspen Skiing Corp.,* 519 F.Supp. 907 (D.Colo.1981), is misplaced. In that case, the court concluded that section 13–80–128, 6 C.R.S. (1973), which authorizes the commencement of a new civil action based upon the same circumstances underlying an original action which had earlier been terminated if the new action is filed within one year after such termination, is not applicable to actions for wrongful death. The court also observed that "I have held that whatever right a plaintiff has to bring a wrongful death action is based solely on the wrongful death statute." 519 F.Supp. at 908. It is, of course, true that section 13–12–201 represents the legislative creation of a new cause of action. *Denver & Rio Grande R.R. v. Frederic,* 57 Colo. 90, 140 P. 463 (1914); *See also Niven v. Falkenburg,* 553 F.Supp. 1021 (D.Colo.1983). The above-quoted language from *Ritter* recognizes no more than this. It certainly does not follow that section 13–21–204 must be deemed a condition precedent to the existence of the exercise of the right of recovery. While it was well within the authority of the General Assembly to so condition this right, we conclude that it chose not to. *See McClanahan v. American Gilsonite Co.,* 494 F.Supp. 1334 (D.Colo.1980).

Public Service Co. suggests that this construction of section 13–21–204 defeats its purpose of strictly limiting the period of time within which wrongful death actions are to be filed. We have already noted that such a purpose is common to all statutes prescribing temporal limits within which claims must be filed. *See State. Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (1979). Furthermore, in creating a new right of recovery when death results from negligent conduct, the General Assembly has demonstrated an overriding purpose of furthering the interests of those who bear the burden of such tragic events. *See, e.g., Myers v. Denver & Rio Grande R.R.,* 61 Colo. 302, 157 P. 196 (1916). To construe the statute as suggested by Public Service Co. would, in effect, benefit negligent tortfeasors rather than wronged parties—a result contrary to the purpose for which this

children, was barred from personally receiving any funds from the estate resulting from such action. The vast majority of these cases have arisen in the context of probate proceedings, wherein considerations of public policy interests in the expedition of such proceedings are of particular significance. None deals with the issues of construction presented by the two statutes involved in this appeal.

remedy was created. *See McClanahan v. American Gilsonite Co., supra.*

Public Service Co. does not dispute the trial court's conclusion that plaintiff was suffering from just such a disability as is contemplated by section 13–81–101(3). That statute is applicable by its terms to "any" statute of limitations. § 13–81–101(1), 6 C.R.S. (1973). Therefore, we agree with the Court of Appeals that the trial court did not err in concluding that section 13–21–204 was tolled until March of 1977, when plaintiff filed her claim in this action.

### III

During the damages portion of her case, plaintiff testified on direct examination that she lived on a farm in Oregon, that an elderly man who formerly helped her work the land no longer could assist her, and that she at present did not have any help. On cross-examination, Public Service Co. asked plaintiff who lived with her on the farm. Plaintiff objected on the ground that such examination would violate the collateral source rule.[5]

During an *in camera* hearing on this issue, plaintiff stated that her present husband resided with her on the farm but did not in fact work the land and that her son previously had performed light farm work for her. The trial court ruled that Public Service Co. could elicit information concerning persons who had resided with plaintiff on the farm, except that she could not be questioned about her remarriage. Public Service Co. did not question plaintiff before the jury concerning her statement that at present no one was living with her.

 Public Service Co. asserts that the trial court's ruling was erroneous because, whatever the merits of the issue of whether remarriage may be introduced on the question of damages in wrongful death cases, the ruling impermissibly restricted its right to challenge plaintiff's credibility.

Assuming, *arguendo*, that plaintiff opened the door to the introduction of evidence of her remarriage by her direct testimony, any error in the trial court's ruling must be considered harmless in this case. Public Service Co. chose not to challenge this portion of plaintiff's direct testimony at all. In such posture, any error in the trial court's ruling did not in any way prejudice Public Service Co.'s case. Erroneous rulings on evidentiary matters, unless prejudicial, are generally not sufficient grounds for reversing a trial court's judgment. *Bigler v. Richards*, 151 Colo. 325, 377 P.2d 552 (1963).

The judgment of the Court of Appeals is affirmed.

---

**5.** The trial court had previously ruled *in limine* that evidence of plaintiff's remarriage would be inadmissible on the question of damages. *See,* *e.g., Annot.,* 88 A.L.R.3d 926 (1978). The correctness of that ruling is not raised on appeal.