**SECURITY SAVINGS & LOAN ASSOCIATION, Petitioner–Appellee,**

v.

**The ESTATE OF Weldon F. KITE and First Interstate Bank of Denver, N.A., as personal representative, Respondents–Appellants.**

**No. 91CA1384.**

Colorado Court of Appeals, Div. II.

Oct. 8, 1992.

Rehearing Denied Nov. 27, 1992.

Burk & Kimmell, Jerry C. Burk, Englewood, for petitioner-appellee.

Bostrom & Sands, P.C., Jon F. Sands, Denver, for respondents-appellants.

Opinion by Judge PIERCE.

The Estate of Weldon F. Kite (the Estate) appeals the summary judgment entered by the probate court in favor of Security Savings & Loan Association (Security) on its petition for allowance of claim. We reverse and remand.

On February 29, 1985, Weldon F. Kite, a limited partner of Delaware Properties, Ltd. (the Partnership), executed a guaranty agreement in favor of Mortgage Finance, Inc. Service Corporation (Mortgage Finance), its assigns and participants, unconditionally guaranteeing payment by the Partnership on a promissory note to be given to Mortgage Finance in the amount of $775,000. The Partnership executed the note to Mortgage Finance on February 20, 1985. Immediately thereafter, Mortgage

Finance assigned all of its rights, title, and interest in the note to Security, although Mortgage Finance continued to service the note by collecting and remitting payment.

Kite died testate on March 29, 1988. The personal representative of the Estate published notice to creditors on May 10, 17, and 24, 1988, stating that all claims against the Estate would be barred unless presented by September 12, 1988. Neither Security nor Mortgage Finance received actual notice of the bar date.

On September 10, 1988, the Partnership defaulted on the note. Mortgage Finance sent a demand letter to the Partnership on November 14, 1988, a copy of which was sent to the Estate. On December 13, 1988, Security sent a letter to the Estate demanding payment of the arrearage. Counsel for the Estate mailed a notice of disallowance of the claim to Security Savings on January 20, 1989. Security then filed a petition in probate court for allowance of its claim against the estate on March 21, 1989, sixty days after the notice of disallowance was mailed.

On April 17, 1989, the Partnership and other guarantors, excluding the Estate, entered into a modification agreement with Security under which the Partnership was to make reduced payments for a period of seventeen months whereupon normal payment would resume. The Partnership performed satisfactorily under the modification agreement until September 1990, when it again defaulted on the note. The guaranty agreement was never revoked or canceled and Security's petition for allowance of claim against the Estate remained pending in probate court.

The Estate and Security filed cross-motions for summary judgment on Security's petition for allowance of claim in February 1991. On July 10, 1991, the probate court granted summary judgment in favor of Security, finding, among other things, that (1) Security filed a timely claim; (2) Security commenced a timely action for allowance of its claim; (3) Security had a valid claim against the estate based on the guaranty agreement; and (4) the April 17, 1989 modification agreement did not bar Security's petition under the doctrine of accord and satisfaction. The Estate now appeals the summary judgment.

### I.

The Estate first contends that Security's petition for allowance of claim is barred under the Colorado nonclaim statute, § 15–12–801, et seq., C.R.S. (1987 Repl.Vol. 6B), as it existed at the time Security's claim arose.

Section 15–12–803(1), C.R.S. (1987 Repl. Vol. 6B) then in effect, provided, in pertinent part, that: "[a]ll claims against a decedent's estate that arise before the death of the decedent" are barred, unless such claims are presented "[w]ithin the time set in the notice to creditors," or "[w]ithin one year after the decedent's death, if notice to creditors has not been published."

The Estate contends that no contingent, liquidated, or unliquidated claim was filed or presented until December 13, 1989, the date of Security's demand letter to the Estate. Thus, because Security failed to present its claim before the September 12, 1988, bar date as stated in the estate's notice to creditors, the Estate concludes that Security's claim is barred. We disagree.

### A.

The timeliness of Security's presentation of its claim depends upon whether the claim is characterized as a contingent claim arising before the death of Kite or a liquidated claim arising after his death.

A contingent claim is one where the liability depends on some future event, which may or may not happen, and which makes it uncertain whether there will ever be liability. *See State v. Fosseen*, 192 Minn. 108, 255 N.W. 816 (1934). For example, a contingent claim arose when a decedent had signed as a guarantor on a note executed by another. *See State ex rel. Zimmerman v. Petzoldt*, 126 Colo. 76, 246 P.2d 909 (1952). A liquidated claim, in contrast, is a fixed or ascertainable sum or obligation owed to a creditor of an estate.

The Colorado nonclaim statute provides that a claimant must present both contingent and liquidated claims within a prescribed period or those claims are barred. Section 15–12–803(1) requires that a claim arising before the death of the decedent, "whether due or to become due, absolute or contingent, liquidated or unliquidated," must be presented within the time set in the notice to creditors, or within one year of the decedent's death if no such notice is provided. Section 15–12–803(2), C.R.S. (1987 Repl.Vol. 6B) requires that a claim arising after the death of the decedent, "whether due or to become due, absolute or contingent, liquidated or unliquidated," if not based upon contract with the personal representative, must be presented within four months after it arises.

In the instant case, Security had a both a contingent claim and a liquidated claim against the Estate arising from the guaranty agreement. The guaranty agreement provided that Kite would:

"[u]nconditionally and absolutely guarantee[ ] the due and punctual payment of the principal of the Note, the interest thereon (including adjustments and increases therein), and any other sums due or which may become due thereon...."

Kite and, after his death, the Estate were under no obligation to Security unless the Partnership defaulted on the note. This contingent obligation arose on the date of execution, February 19, 1985.

Hence, because the contingent claim arose prior to Kite's death, § 15–12–803(1) required Security to present a contingent claim within the period set forth in the published notice to creditors. However, Security presented no contingent claim.

Security's liquidated claim against the estate arose when the Partnership defaulted on the note in September of 1988. At that time, the Estate's liability to Security under the guaranty agreement became fixed and payable. Because this fixed obligation arose after Kite's death, § 15–12–803(2) required Security to present its claim within four months after the obligation arose, which Security did on December 13, 1988.

**B.**

■ Courts in other jurisdictions have held that a creditor's failure to present a timely contingent claim will bar a subsequent liquidated claim when the obligation becomes absolute. *See American Surety Co. v. Murphy*, 151 Fla. 151, 9 So.2d 355 (1942); *Gardner Hotel Supply v. Estate of Clark*, 83 Nev. 388, 432 P.2d 495 (1967). However, we are persuaded that under the Colorado nonclaim statute, failure to present a contingent claim should not bar a subsequent liquidated claim based on the same instrument.

A contingent claim has no effect on the property rights of the claimant or the decedent's estate until the contingency occurs. The filing of a contingent claim permits the personal representative to set aside assets for future distribution should the claim become absolute; however, the representative is not required to do so. *See Powers Boulevard Associates, Ltd. v. Estate of Reel*, 839 P.2d 516 (Colo.App.1992); § 15–12–810, C.R.S. (1987 Repl.Vol. 6B) (court or personal representative "may" provide for payment of contingent claims).

The presentation of a contingent claim does not hasten the final settlement of an estate and to reserve against such contingencies may greatly impede the full distribution of an estate. *See Powers Boulevard Associates, Ltd. v. Estate of Reel*, *supra* (estate held open for three years). Moreover, to require reservation of assets against contingencies would be contrary to the policy of speedy and efficient settlement of estates which underlies the Colorado Probate Code. *See In re Estate of Daigle*, 634 P.2d 71 (Colo.1981). Therefore, failure to present a timely contingent claim should not bar a subsequent liquidated claim when the obligation becomes fixed or ascertainable.

■ The Colorado nonclaim statute is in derogation of common law rights which would otherwise exist against a decedent's estate. Therefore, it must be strictly construed in favor of permitting consideration

of all legitimate claims. *In re Estate of Scott*, 735 P.2d 924 (Colo.App.1986).

Because Security's right to payment under the Guaranty Agreement arose, at the earliest, when the Partnership defaulted on the note on September 10, 1992, Security's failure to present a prior contingent claim will not bar a timely liquidated claim. *See Baker v. Baker*, 220 Iowa 1216, 264 N.W. 116 (1935).

■ Security's demand letter to the Estate dated December 13, 1988, constituted a timely and sufficient notice of its liquidated claim against the Estate. Sections 15–12–803(2)(b) and 15–12–804(1), C.R.S. (1987 Repl.Vol. 6B). Therefore, the probate court did not err in granting summary judgment in favor of Security on this issue.

## II.

■ The Estate next contends that Security failed to commence a proceeding for allowance of claim within the time permitted by the Colorado nonclaim statute. Section 15–12–804(2), C.R.S. (1987 Repl.Vol. 6B) provides, in pertinent part, that the commencement of any proceeding or any claim "must occur within the time limited for presenting the claim." Because § 15–12–803(2)(b) requires a party to present a claim arising after the decedent's death within four months after the claim arose, the Estate argues, Security was required to commence its action no later than January 10, 1989, four months after the Partnership defaulted on the note. Therefore, the Estate concludes, because Security did not commence an action for the allowance of its claim until March 21, 1989, Security's claim is barred. We agree.

Security contends that § 15–12–806(1), C.R.S. (1987 Repl.Vol. 6B), which states that an action for allowance of claim must be commenced within sixty days after a notice of disallowance is mailed, serves to extend the four-month nonclaim period set forth in § 15–12–803(2)(b). To hold otherwise, Security argues, would require a claimant to commence an action before the four-month nonclaim period expires, even if the personal representative of the dece-

dent's estate has not yet allowed or disallowed the claim, in order to avoid having the claim barred. Security concludes that because it commenced its action on March 21, 1989, sixty days after the notice of disallowance was mailed, its action was timely under § 15–12–806(1) despite the fact that it was commenced more than four months after the claim arose.

Although Security presents a compelling equitable argument, Security's interpretation of § 15–12–806(1) is contrary to the plain language of the nonclaim statute as well as interpretations of that statute by the courts of this state.

■ The time limitations contained in the Colorado nonclaim statute have been strictly construed. The basic purpose of the Colorado Probate Code is to promote the speedy and efficient settlement of estates. *In re Estate of Daigle, supra.* Consistent with this policy, failure of a party to commence an action within the time limits specified by the nonclaim statute removes jurisdiction from the trial court to consider the claim. *In re Alperstein v. Sherwood International, Inc.*, 778 P.2d 279 (Colo.App. 1989).

Even if the personal representative of a decedent's estate fails to allow or disallow a claim before the nonclaim period runs, § 15–12–806(1) does not enlarge the time for commencement of actions. To the contrary, this court has held that "although the 60 days in which to commence a proceeding after the mailing of notice of disallowance may be extended by the court or personal representative, *any extension may not 'run beyond the applicable statute of limitations.'"* *Wishbone v. Eppinger*, 829 P.2d 434 (Colo.App.1991) (emphasis supplied); *see also In re Estate of Randall v. Colorado State Hospital*, 166 Colo. 1, 441 P.2d 153 (Colo.1968). Therefore, even though the personal representative has not yet allowed or disallowed a claim, the nonclaim statute requires a claimant to commence an action within the time permitted for presentation of a claim.

In arguing that § 15–12–806(1) extends the four month period for commencing an

action under § 15–12–804(2), Security relies on our holding in *In re Estate of Roddy*, 784 P.2d 841 (Colo.App.1989). In *Roddy*, a claimant's timely claim against the decedent's estate was deemed allowed under § 15–12–806(1) by the failure of the personal representative to disallow the claim within sixty days. After the published bar date had passed, the personal representative of the estate notified the claimant that her claim had been disallowed. The claimant then filed an action for allowance of her claim. In affirming the claimant's right to contest the disallowance, we noted that "the personal representative changed the deemed allowance to a disallowance, which, under § 15–10–806(2), the claimant was entitled to contest." *In re Estate of Roddy, supra.*

Our reasoning in *Roddy* is inapplicable to the facts of this case. Here, the personal representative of the Estate gave Security timely notice that its claim had been disallowed. Unlike the claim presented in *Roddy*, Security's claim was never allowed, and the notice of disallowance did not affect the rights of Security.

To adopt Security's interpretation of § 15–12–806(1) as enlarging the time for commencing an action under these circumstances would undermine the policy of speedy and efficient settlement of estates which underlies the Colorado Probate Code. Thus, the probate court erred in finding that Security commenced its action in a timely manner.

### III.

Because we reverse the judgment of the probate court on the grounds that Security failed to commence its action within the time set forth in the Colorado nonclaim statute, we need not reach the remaining issues raised by the Estate.

The judgment is reversed, and the cause is remanded for proceedings consistent with the views expressed herein.

REED and RULAND, JJ., concur.