## No. 15,977.

### FISH *v.* LILEY ET AL.
(208 P. [2d] 930)

Decided June 13, 1949.    Rehearing denied July 22, 1949.

Messrs. YOUNG & YOUNG, for plaintiff in error.

Messrs. MURRAY, BAKER & WENDELKEN, for defendant in error Williams.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

PLAINTIFF in error was plaintiff in the trial court. For convenience the parties will be designated as plaintiff and defendant and all references to defendant, unless otherwise indicated, are to defendant Mary Jane Williams as administratrix of the estate of Henry M. Drennan, deceased.

The plaintiff's husband, Thomas G. Fish, was a passenger in an automobile being driven by defendant Liley upon a public highway near Colorado Springs when the car collided with an automobile being driven in the opposite direction by Henry M. Drennan. The accident caused the death of both Drennan and Fish. While it does not appear from the pleadings, it is conceded in argument that Drennan predeceased Fish by a few hours. Plaintiff brought this action as the widow of Fish against the administratrix of the estate of Drennan, and alleges that the negligence of the deceased Drennan at the time of the collision proximately caused the death of Fish. The defendant filed a motion to dismiss upon

the ground that "the complaint fails to state a claim against said defendant upon which relief can be granted," which motion was sustained by the trial court. Judgment was entered dismissing the complaint as to the defendant administratrix, to review which plaintiff brings the cause here for review by writ of error.

■ Assuming the truth of the allegations of the plaintiff's complaint (as we must under the state of the pleadings) the facts are that defendant's intestate, Henry M. Drennan, negligently caused the death of plaintiff's husband, Thomas G. Fish, in an automobile accident.

The statutes of Colorado which are to be considered in the determination of the questions here involved are as follows:

Section 2, chapter 50, '35 C.S.A.: "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the party injured." Section 3, chapter 50, '35 C.S.A.: "All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in section 1 of this chapter, and in every such action the jury may give such damages as they may deem fair and just, not exceeding five thousand (5,000) dollars, with reference to the necessary injury resulting from such death, to the surviving parties, who may be entitled to sue; and also having regard to the mitigating or aggravating circumstances attending any such wrongful act, neglect or default." Section 247, chapter 176, '35 C.S.A.: "All actions in law whatsoever, save and except actions on the case for slander or libel, or trespass for injuries done to the person, and actions brought for the recovery of real

estate, shall survive to and against executors, administrators and conservators."

Counsel for plaintiff in their brief contend that she "has a cause of action against defendant under all the requirements of the Death Act, and further that her cause of action survives against Drennan's administratrix, under the Colorado survival statute, notwithstanding the fact that Drennan the tort-feasor died before the death of plaintiff's intestate."

Counsel for defendant contend that at common law the plaintiff has no action and "unless by her complaint she can bring herself wholly within the terms of some statute her action must fail"; that the Colorado statutes do not authorize the plaintiff's action because: (1) A condition precedent to the application of the wrongful death statute is "that the injured party must himself have been entitled to maintain an action and recover damages, which condition is absent by reason of the prior death of Drennan; (2) even if plaintiff had a cause of action under the death statute, "it cannot survive the tort-feasor's death under the survival statute, since to survive an event the thing which survives must be in existence at the time the event occurred;" and (3) that plaintiff's action falls within the specific exception of the survival statute which provides that "actions of trespass for injuries to the person" do not survive.

Questions to be Determined.

■■ ■ First: *Where death of husband of a plaintiff is caused by negligence of another in driving a motor vehicle, and plaintiff sues for damages resulting from such wrongful death, is the action one for trespass for "injuries done to the person" within the meaning of the survival statute, and, as such, barred upon the event of her husband's death?*

The decided cases from jurisdictions outside Colorado disclose that there are two lines of authority regarding the theory upon which statutes giving survivors an action for wrongful death are based, namely, the "sur-

vival" theory and the "new cause of action" theory. These divergent theories and the results which follow in the wake of each are discussed at length in 16 American Jurisprudence at pages 47 - 49. This court has heretofore inclined toward the "new cause of action" theory, and to the extent that any doubt exists with regard thereto we adopt that theory now.

The Death Act, section 2, chapter 50, '35 C.S.A., contemplates a living tort-feasor and provides a compensatory remedy to the beneficiaries therein named and therein authorized to sue, which theretofore was nonexistent under the common-law rule embodied in the maxim, "Actio personalis moritur cum persona." Properly considered, however, the Death Act is not a survival statute. This is true for the reason that the cause of action created by the statute is separate and distinct from the action which the deceased would have for personal injuries had he survived. The wife's action is rooted in the statute itself and the elements of her damage are essentially different from those proper for consideration in a personal injury action to which her injured husband would have been entitled if death had not ensued.

In *Moffatt v. Tenney*, 17 Colo. 189, 30 Pac. 348, this court, in construing the Death Act here in question and in pointing out the distinctions in the measure of damage brought about by the repeal of the original act of 1872, stated: "The act of 1877 under which this action is brought, is quite different; it prescribes in terms both a rule and a limit; it provides for giving *such damages as the jury may deem fair and just;* not exceeding $5,000; it further restricts the damages to the *necessary injury resulting from such death to the surviving parties entitled to sue.* This would seem to preclude the idea that damages as a punishment to the party causing the death could have been intended. Damages awarded as a punishment for causing the death of a man, may, or may not, be equivalent to the necessary injury resulting to

his surviving wife. Her injury, so far as the statute undertakes to provide redress, rests upon a pecuniary basis. She may suffer as much pecuniary injury where the negligence causing her husband's death is slight as where it is gross. Her necessary injury depends, not upon the character of the act causing death, but upon the character, ability and industry of her husband in providing for his family—that is, upon the pecuniary value of his life to her, or the pecuniary loss she will be likely to suffer in consequence of his death. 2 Thompson on Negligence, p. 1289, et seq.; Sherman & Redfield on Negligence, sec. 610, ad finem."

In *Hayes v. Williams*, 17 Colo. 465, 30 Pac. 352, it was held that the statutory provisions here under consideration are remedial and not penal, and it was therein stated: "They are enacted for the purpose of preserving to the surviving relatives designated in section 1508, *supra*, a right of action that would else have failed by the decease of the party injured. They are in aid of the common law, not in derogation thereof. That the recovery authorized is purely compensatory, appears too plainly from the language employed in said section 1509 to admit of doubt. The jury are thereby limited to a fair and just compensation with reference to the necessary injury, and the phrase 'mitigating or aggravating circumstances' is confined to those circumstances which increase or diminish this compensation. *Moffatt v. Tenney*, 17 Colo. 189. These provisions should unquestionably receive a liberal construction. In support of the foregoing proposition, see *Haggerty v. Central R.R. Co.*, 31 N. J. Law, 349; *Lamphear v. Buckingham*, 33 Conn. 237; *Burns v. Grand Rapids & I.R.R. Co.*, 113 Ind. 169; Cooley, Const. Lim. (5th ed.) 715. Giving a like construction to what is known as the Lord Campbell's Act, which may be regarded as the parent of sections 1509 and 1510, *supra*, and of all similar American statutes, see Cooley on Torts p. 254."

In *Lee v. City of Fort Morgan*, 77 Colo. 135, 235 Pac.

348, the statutory provisions here in question were again considered, and this court stated: "This statutory action is not the survival of the action to recover for the personal injury but is a new and different kind of action and is to recover compensation for death. See Prouty Case, supra. Some of the elements of the one are absent from the other, as, for example, the injured person may recover for physical and mental pain, bodily disfigurement, decreased earning power, loss of time, which in an action for death are not recoverable."

In *Denver & Rio Grande Railroad Co. v. Frederic*, 57 Colo. 90, 140 Pac. 463, it was said: "Sections 2057, 2058 [the same provisions involved in the case at bar] are distinctively and by express terms compensatory provisions, authorizing an action for damages as compensation for the death of a person caused by the wrongful act, neglect or default of another, where such wrongful act, neglect or default is such that if death had not ensued the party injured could have maintained an action for damages. Under these sections the amount of recovery is to be determined from the prospective accumulations of the deceased had he not been killed, having reference to his or her age, occupation, habits, bodily health and ability to earn money. Compensation as damages under these sections is based on the reasonable expectation of benefit which a plaintiff may have a right to indulge from a continuance of the life of the deceased."

From the foregoing decisions it would seem clear that it is inaccurate to use the expression "survival" in connection with the plaintiff's cause of action. The thing which actually survives the death of plaintiff's husband is a liability of the tort-feasor, which is created by the statute and which is essentially different from any liability chargeable to the tort-feasor prior to the death of the husband of plaintiff. The remedy of plaintiff, therefore, is a statutory remedy resting upon the statutory liability, and is not dependent for its existence

upon elements characterizing it as an action ex contractu or an action ex delicto. We agree with counsel for plaintiff in the statement contained in their brief that: "It must therefore be concluded that in contemplation of the Death Act plaintiff has sustained a property damage attendant upon the death of her husband." If, since the death was caused by injuries inflicted through negligence, a tort action terminology must be employed in describing the nature of plaintiff's action, it can be classified as a property tort action and cannot be classified as a tort action "for injuries done to the person." *Prouty v. Chicago,* 250 Ill. 222, 95 N.E. 147.

It follows, therefore, that the question here under discussion must be answered in the negative.

Second: *What effect does the death of the tort-feasor, Drennan, prior to that of plaintiff's husband, have upon the plaintiff's right of action?*

We now examine the Death Act to determine whether or not plaintiff's rights are adversely affected by the admitted death of Drennan prior to the death of plaintiff's husband. The contention of the defendant is that when Fish died plaintiff's cause of action matured, that it did not exist prior to Fish's death, and that a condition precedent to her right to sue is that her deceased husband must have then been in a position, if living, to have maintained an action and recover damages, which he could not have done since Drennan was then dead. This argument is based upon that portion of the act which provides that whenever the wrongful act is such as would, if death had not ensued, "have entitled the party injured to maintain an action and recover damages in respect thereof, then, * * * the person who * * * would have been liable, if death had not ensued, shall be liable * * *." It is argued, in substance, that under the maxim of the old common law all liability of Drennan, including that created under the Death Act, was buried in the grave with Drennan. Admittedly any action by Fish against Drennan would be an action

164

for injuries done to the person and would not "survive" the death of Drennan.

It is important to note that the Death Act is silent concerning the time at which the death and the resultant damages must occur in order for liability thereunder to attach. The Act does not provide that in the event that the tort-feasor dies first no action can be maintained against his representatives by either the injured party or by his beneficiaries under the statute. If such a result obtains it results from the common law, and it can only follow if the statutory provisions have not brought about a change in the common law.

As hereinabove pointed out, the Death Act is not in its essence a "survival" statute, but operates to create a new cause of action. The material condition precedent to the creation of the new cause of action in the plaintiff, as set forth in the statute, is that the wrongful act of Drennan must be such as would have *entitled* Fish to maintain an action and recover damages in respect thereof. We construe the provision to be descriptive of the kind of conduct on the part of the tort-feasor which gives rise to the liability created by the statute. Therefore if at any time subsequent to the wrongful act of Drennan, and by reason of the nature of said wrongful act, Fish was entitled to maintain an action and as of that moment to recover damages, the statutory action accruing to the plaintiff is perfected upon the death of Fish. The Death Statute contemplates "entitlement" to an action at any time, and "entitlement" to damages at any time following the wrongful act of the tort-feasor, and does not contemplate a destruction of the cause of action created, by the death of the tort-feasor subsequent to the wrongful act resulting in injuries, and ultimately death, to another.

In section 4, chapter 50, '35 C.S.A., it is stated that all actions provided for by the Death Act "shall be brought within two years from the commission of the alleged negligence resulting in the death for which suit

is brought." Thus it appears that the statute of limitations begins to run immediately upon the happening of the wrongful act, and plaintiff's cause of action takes form at that time even though it is dependent upon the subsequent death of her husband to ripen into full existence. The plaintiff's right of action under the statute was in existence and inchoate at the time of the commission of the wrongful act by Drennan resulting thereafter in the death of her husband.

Our survival statute, section 247, chapter 176, '35 C.S.A., provides, "All actions in law whatsoever" shall survive except those specifically mentioned in the exceptions contained in the statute. Plaintiff's action is not one for injuries to the person, and accordingly survives the death of Drennan and can be maintained against his legal representatives.

The decided cases from other jurisdictions bearing upon the question under discussion are in irreconcilable conflict. Whether the views hereinabove expressed follow the majority or minority of the decided cases is debatable when variations in the statutory provisions are considered. We agree with the reasoning expressed in 48 Harvard Law Review at page 1012 where we find the following pertinent language: ."Since the medieval notion that tort actions are punitive has long been abandoned, the wrongdoer's death should not end liability, and his distributees should be made to satisfy claims against him. And since, conversely, compensation is the purpose of modern tort recovery, it should accrue not only to a living person but also to his estate. On this analysis, the coincidence of the deaths of both parties is immaterial."

In *Blakeley v. Estate of Shortal*, 236 Ia. 787, 20 N.W. (2d) 28, one Shortal committed suicide in the home of the plaintiff during her absence from the home. She suffered shock to the nerves upon her return and discovery of the bloody corpse, with resultant nervousness

and upset condition thereafter. It was there urged, as here, that since the injury to plaintiff did not occur until after the death of Shortal there was nothing for the survival statute to operate upon. Admittedly plaintiff was not injured until after Shortal was dead. In the case at bar admittedly when Drennan died the plaintiff's statutory cause of action had not matured because her husband still lived. In overruling the contention that the tort-feasor's death ended liability, the Supreme Court of Iowa stated: "If Martin Shortal wilfully set in motion a cause that after his death proximately operated to the damage of appellant, to whom he owed a duty, his estate should not be permitted to escape liability. For the purpose of the survival statute, the cause of action arose before and survived after his death. The damage, when it happened, related back to the willful act of the decedent."

In *Devine v. Healy,* 241 Ill. 34, 89 N.E. 251, under statutes similar to those now before us, it was held that to sustain the contention there made that the death of the tort-feasor ended liability, "would leave the administrator of the person wrongfully injured, who dies from his injuries, without any right to proceed against the administrator of the wrongdoer, precisely as was the situation at common law." The court rejected the contention, and held, as applied to the case at bar, that the representatives of Fish could maintain an action against the administratrix of Drennan, notwithstanding the death of Drennan.

Other cases supporting the views expressed herein are, *Davis v. Nichols,* 54 Ark. 358, 15 S.W. 880; *Ehrlich v. Merritt,* 96 F. (2d) 251; *Ford v. Maney's Estate,* 251 Mich. 461, 232 N.W. 393; *Kuhnle v. Swedlund,* 220 Minn. 573, 20 N.W. (2d) 396.

Counsel for both parties have ably presented the matter both in oral argument and by printed briefs. Our considered judgment is that the rule best founded

in justice, logic and reason, is that hereinabove expressed.

The judgment is accordingly reversed and the cause remanded with directions to the district court to proceed in a manner consistent with the views herein expressed.