**In the Matter of the ESTATE OF Harry P. DAIGLE, Deceased.**

**No. 80SA424.**

Supreme Court of Colorado, En Banc.

Sept. 21, 1981.

Kenneth C. Groves, Denver, for Jo Ann M. Snyder, As Personal Representative of the Estate of Seymour Roderick Snyder, and Individually, and as Parent and Next Friend on Behalf of Richard Roderick Snyder, Lori Dianne Snyder, and Kathleen Carol Snyder.

DeMoulin, Anderson, Campbell & Laugesen, Laird Campbell, Denver, for Ranger Ins. Co.

Tilly & Graves, Laurent A. Bougie, Denver, for First Nat. Bank of Denver.

QUINN, Justice.

This appeal raises three separate issues of law stemming from a wrongful death claim filed by a surviving spouse, individually and as parental next friend of her three minor children, against a decedent's estate.[1] The district court held that the nonclaim statute, section 15–12–803(2)(b), C.R.S. 1973, which bars any claim not filed against a decedent's estate within four months after it arises, was tolled by reason of the minority of the claiming children. The district court also rejected an insurance carrier's equal protection challenge to section 15–12–803(3)(b), C.R.S. 1973, which, up to the limits of liability insurance protecting a decedent's estate, excludes from the mandatory four month period for presenting claims against an estate "any proceeding to establish liability of the decedent or the personal representative for which he is protected by liability insurance." Finally, the court in-

---

1. This appeal was originally filed in the court of appeals but was transferred to this Court pursuant to sections 13–4–102(1)(b) and 13–4–110, C.R.S. 1973.

terpreted the liability insurance policy so as to limit the coverage to $100,000 for the surviving spouse's wrongful death claim, which also was filed after the expiration of the four month period for presenting claims against the estate.

We affirm those parts of the judgment relating to the constitutionality of section 15–12–803(3)(b) and the interpretation of the insurance policy. We reverse that part of the judgment which holds that the nonclaim statute was tolled by the minority of the children.

## I.

The facts are undisputed. On March 10, 1978, Harry P. Daigle was operating an airplane in which Seymour R. Snyder was riding as a passenger. The plane crashed at the Arapahoe County Airport, resulting in the deaths of Daigle and Snyder. The Daigle estate was opened on March 28, 1978, with the First National Bank of Denver (First National) being appointed personal representative. First National on that date caused a notice to creditors to be published which fixed August 7, 1978, as the last day for filing claims against the estate.[2] On September 7, 1978, the wife of Seymour Snyder, Jo Ann M. Snyder, on behalf of herself and her three minor children, then 11, 13, and 14 years old, filed a claim against the Daigle estate in the amount of

$2,500,000 for the wrongful death of her husband and father of the three children.[3]

On September 28, 1978, First National disallowed the claim on the ground that, not having been filed prior to the last day fixed in the notice to creditors, it was barred by the nonclaim statute. Mrs. Snyder then petitioned the court for allowance of the claim,[4] contending that, as to the children's claim for wrongful death, the bar of the nonclaim statute was tolled by their minority.[5]

Mrs. Snyder also asserted that because of liability insurance covering the Daigle estate for the airplane crash, section 15–12–803(3)(b), C.R.S. 1973, excepted her own claim from the nonclaim bar up to the limits of the insurance. First National conceded the applicability of the insurance exception to the wrongful death claim but Ranger Insurance Company (Ranger), the insurer under the liability policy covering the Daigle estate, claimed the insurance exception violated equal protection of the laws.

Ranger also asserted that the insurance policy, as modified by endorsement, limited Ranger's liability for the wrongful death claim to $100,000. The policy provided liability insurance for those coverages purchased by a specific premium payment as indicated in the declarations. A premium was paid only for Coverage D, a single limit bodily injury and property damage liability,

---

2. Section 15–12–801, C.R.S. 1973 (1980 Supp.), provides that the notice to creditors shall fix a date for the filing of creditors' claims, which shall be not earlier than four months from the date of first publication or one year from the date of death, whichever occurs first.

3. An action for wrongful death under section 13–21–202, C.R.S. 1973, may be instituted by a surviving spouse or, if he or she fails to sue within one year after the death, then by the heirs of the deceased. Section 13–21–201(1)(b), C.R.S. 1973. If the action is brought by the surviving spouse, any judgment "shall be owned by such persons as are heirs at law of the deceased under the statutes of descent and distribution, and shall be divided among such heirs at law in the same manner as real estate is divided according to said statute of descent and distribution." Section 13–21–201(2), C.R.S. 1973. When the surviving issue are also issue of the surviving spouse, the intes-

tate share of the surviving spouse is the first $25,000 plus one-half of the balance of the intestate estate. Section 15–11–102(1)(b), C.R.S. 1973. That part of the intestate estate not passing to the surviving spouse passes to the issue of the decedent. Section 15–11–103(1), C.R.S. 1973.

4. Under section 15–12–806(1), C.R.S. 1973 (1980 Supp.), a claimant may file a petition for allowance or commence a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance.

5. Although not alleged in her petition for allowance, the issue of the effect of the nonclaim statute on the children's claim was raised during the proceedings below and the court expressly ruled on the issue in its written order of judgment.

for a one year period commencing June 16, 1977. The insuring agreement for Coverage D was as follows:

"Coverage D—Single Limit Bodily Injury (including or excluding passengers) and Property Damage Liability. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, excluding passengers as defined herein, unless the Declarations describe Coverage D as 'Including Passengers,' and for damages because of injury to or destruction of property, including the loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft."

The policy defined a passenger to include any person while in, on, or entering the aircraft for the purpose of riding or flying therein. For purposes of Coverage D an insured included "any person while using or riding in the aircraft . . . provided the actual use is with the permission of the Named Insured." Coverage D provided for a liability limit of $1,000,000 per occurrence for bodily injury and property damage liability including passengers. An occurrence was defined as an accident resulting in injury during the policy period. There was an endorsement to the policy which became effective with the issuance of the policy on June 16, 1977. The endorsement stated:

"Under Coverage D it is agreed that the Company's limit of liability as respects bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by passengers, shall be subject to a maximum of $100,000 each person, $400,000 each occurrence."

The parties agreed that the determination of legal issues raised by Mrs. Snyder's petition for allowance was crucial to a wrongful death suit commenced by her on November 9, 1978, in a separate action in the district court.[6] In that lawsuit Mrs.

Snyder sued the Daigle estate in her capacity as surviving spouse and as parental next friend of her three children. The court concluded that the nonclaim statute was tolled by the minority of the Snyder children; it also upheld the constitutionality of section 15–12–803(3)(b); and it construed the Ranger policy as limiting the coverage to $100,000. All parties have appealed those aspects of the court's judgment which adversely affect their claim or defense.

We first will address First National's contention that the nonclaim statute is not tolled by the minority of the Snyder children, next Ranger's assertion that the exception to the nonclaim statute violates equal protection of the laws, and last Mrs. Snyder's argument that the Ranger insurance policy does not limit the wrongful death claim to $100,000.

II.

First National contends that, with respect to the Snyder children's wrongful death claim against the Daigle estate, section 15–12–803(2)(b) of the nonclaim statute was not tolled by reason of the children's minority. Resolution of this issue requires a determination of legislative intent from competing statutory schemes.

On the one hand, the purpose of the Colorado Probate Code is "[t]o promote a speedy and efficient system for settling the estate of the decedent and making distribution to his successors." Section 15–10–102(2)(c), C.R.S. 1973. Section 15–12–803(2) effectuates this purpose by providing:

"All claims against a decedent's estate which arise at or after the death of the decedent including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees

---

**6.** Section 13–51–108, C.R.S. 1973 (1980 Supp.), allows an estate creditor to obtain a declaration of rights against an estate. Section 13–51–106, C.R.S. 1973, allows the court to construe stat-

utes and contracts in order to determine the rights, status or legal relations of the parties. *See also* C.R.C.P. 57(d).

of the decedent, unless presented as follows:

(a) A claim based on a contract with the personal representative, within four months after performance by the personal representative is due;

(b) Any other claim, within four months after it arises."

Section 13–81–103(1), C.R.S. 1973, on the other hand, creates what is the equivalent of a statutory toll to applicable statutes of limitations for persons under disability, such as minors, at the time a right of action accrues. *Sommermeyer v. Price*, 198 Colo. 548, 603 P.2d 135 (1979); *see also McKinney v. Armco Recreational Products, Inc.*, 419 F.Supp. 464 (D.Colo.1976); *Antonopoulos v. Telluride*, 187 Colo. 392, 532 P.2d 346 (1975). Upon termination of the disability, section 13–81–103(1)(c) allows "such person . . . to take action within the period fixed by the applicable statute of limitations, or within two years after the removal of the disability, whichever period expires the later." [7]

In *Estate of Randall v. Colorado State Hospital*, 166 Colo. 1, 441 P.2d 153 (1968), this court considered whether the former nonclaim statute, C.R.S. 1963, 153–12–12(1), constituted a jurisdictional bar to a late claim filed by the Colorado State Hospital against a decedent's estate for care and maintenance of the decedent's incompetent minor child. In holding the state's claim barred, the court distinguished a nonclaim statute from a statute of limitations:

"A nonclaim statute operates to deprive a court of jurisdiction. The personal representative of an estate can neither waive it nor toll it . . . . A nonclaim statute imposes a condition precedent to the enforcement of a right of action; that is to say, the claim must be presented within the time set in the notice to creditors or be *barred*. A statute of limitations, on the other hand, does not bar the right of action but only the remedy . . . . Such a statute may be tolled. Such a statute is a defense which is waived if not affirmatively pleaded." 166 Colo. at 6–7, 441 P.2d at 155.

This distinction was reaffirmed in *Sommermeyer v. Price, supra*, 198 Colo. at 551, 603 P.2d at 138, where the court stated:

"We interpret the language of this court in *Randall*—that a nonclaim statute operates to deprive a court of jurisdiction— as limited only to late filed claims in a then pending estate. In other words, once an estate was opened and a notice to creditors had been given, the court was without jurisdiction to adjudicate untimely filed claims." [8]

In *Sommermeyer*, minor claimants sought to recover on a claim against a special administrator of their mother's estate for the death of their father, killed while riding as a passenger in an automobile operated by the mother. The minors failed to procure the appointment of an administrator of the mother's estate within one year of her death, as required by the then applicable statute. This court held that the tolling of the one year period due to the minority of the children did not offend the policy underlying the nonclaim statute because "no estate was opened against which a claim could be filed," 198 Colo. at 551, 603 P.2d at 138, and further:

"Here, the estate consists only of a liability insurance policy the proceeds of which may only be claimed by plaintiffs who are entitled to be indemnified in accordance with the terms of the policy. Thus, the proceeds are not available to the general creditors or beneficiaries of the estate. Moreover, the claims of the plaintiffs to be satisfied by the insurance proceeds do not affect the interests of the beneficiaries under the estate and thus

---

7. That the provisions of section 13–81–103(1)(c), C.R.S. 1973, are not intended to affect the jurisdiction of a court to act, but rather are intended as a statutory toll to statutes of limitations, is obvious from the plain language of the statute itself, prior judicial interpretation of the statute, *see e. g., McKinney v. Armco Recreational Products, Inc.*, 419 F.Supp. 464 (D.Colo.1976); *Sommermeyer v. Price*, 198 Colo. 548, 603 P.2d 135 (1979), and the relationship of section 13–81–103 to other sections of Article 81. In particular, section 13–81–106, C.R.S. 1973, states:

"If before the expiration of the period fixed by the applicable statute of limitations the disability of any person under disability is removed, the fact of such removal shall not in any way affect or stop the running of the applicable statute of limitations, except as provided in section 13–81–103(1)(c)."

8. Mrs. Snyder contends that the language in *Estate of Randall* construing the nonclaim statute as jurisdictional in character and not subject to a statutory toll was significantly limited by the *Sommermeyer* case. We do not agree.

*Estate of Randall*, decided in 1968, long preceded the enactment of the Colorado Probate Code, which became effective on July 1, 1974. Section 15–17–101(1), C.R.S. 1973. If the legislature intended to exempt late claims by minors and other persons under disability from the jurisdictional bar of the nonclaim statute it reasonably may be assumed that appropriate statutory language would have been included in section 15–12–803 to accomplish this result. The language of section 15–12–803(2) stating that "[a]ll claims . . . are barred" is practically identical to the statutory terminology of the predecessor nonclaim statute, C.R.S. 1963, 153–12–12(1), namely that "[a]ll claims . . . shall be forever barred . . . ." Given our unambiguous statements in *Estate of Randall* that such language "is not the language of a statute of limitations," and our reaffirmation of this proposition in *Sommermeyer*, the conclusion is compelling that the use of virtually the same language in section 15–12–803(2) indicates legislative acquiescence in the judicial construction previously placed on the nonclaim statute. *See, e. g., Thompson v. People*, 181 Colo. 194, 510 P.2d 311 (1973); *Creacy v. Industrial Commission*, 148 Colo. 429, 366 P.2d 384 (1961).

■ Our construction of the nonclaim statute as jurisdictional in character, and therefore not subject to the tolling provisions otherwise applicable to statutes of limitations, is consistent with one of the basic purposes of the Colorado Probate Code: "[t]o promote a speedy and efficient system for settling the estate of the decedent and making distribution to his successors." Section 15–10–102(1)(c). Construing the nonclaim statute as a statute of limitations frustrates this statutory goal. *See, e. g., Estate of Randall v. Colorado State Hospital, supra; Glass v. Benkert*, 18 Cal.

App.3d 322, 95 Cal.Rptr. 735 (1971); *In Re Baker's Estate*, 48 Ill.App.2d 442, 199 N.E.2d 307 (1964), *cert. denied*, 389 U.S. 874, 88 S.Ct. 165, 19 L.Ed.2d 157 (1967); *Van Haaren v. Tierney*, 180 Mich. 192, 146 N.W. 660 (1914); *Commerce Union Bank v. Gillespie*, 178 Tenn. 179, 156 S.W.2d 425 (1940). The heirs of a decedent and the devisees under a will often have needs which can be satisfied only by an expeditious distribution of property.[9]

Moreover, the structure of the Colorado Probate Code is such that the application of the disability toll to the nonclaim statute would cast substantial doubt on the finality of any distribution to an heir or devisee and the distributee's right thereto. Sections 15–12–1004, C.R.S. 1973 (1980 Supp.), and 15–12–1006, C.R.S. 1973, point up the problem for the distributee. Section 15–12–1004 provides in pertinent part:

"After assets of an estate have been distributed and subject to section 15–12–1006, an undischarged claim not barred may be prosecuted in a proceeding against one or more distributees. No distributee shall be liable to claimants for amounts received as exempt property or family allowances or for amounts in excess of the value of his other distributions as of the time of such distributions. As between distributees, each shall bear the cost of satisfaction of unbarred claims as if the claim had been satisfied in the course of administration . . . ."

Section 15–12–1006 permits a claimant to file such action within three years after the decedent's death, or one year after the time of distribution, whichever later occurs. If the nonclaim statute could be tolled by disability, then a minor's claim would be a claim "not barred" within the meaning of section 15–12–1006. The distributee, therefore, could be sued for satisfaction of the

present no obstacle to an orderly and exact administration of the estate . . . . The General Assembly has recognized this distinction in enacting the present day Probate Code. *See* section 15–12–803(3)(b), C.R.S. 1973." 198 Colo. at 551, 603 P.2d at 138.

This language, when read in conjunction with the other quotation set out in the body of this

opinion above, clearly indicates that it was neither intended to, nor did in fact, undercut the holding in *Estate of Randall* on the jurisdictional character of the nonclaim statute.

9. Mr. Daigle, for example, was survived by two adult sons and two minor children, aged seven and nine years old.

claim within the time limitations of section 15–12–1006. Further, if the nonclaim statute could be tolled by disability, it would be patently inconsistent not to subject section 15–12–1006 to the same toll. Thus, the distributee's liability under section 15–12–1004 could be virtually indeterminate and interminable.[10]

■ Considering the structure and purpose of the Colorado Probate Code, along with the legislative acquiescence in our prior construction of the predecessor nonclaim statute, we hold that section 15–12–803(2) creates a jurisdictional bar to a claim untimely filed on behalf of a minor against a decedent's estate, except to the extent of the liability insurance exemption of section 15–12–803(3).[11] The Snyder children's claim, like that of Mrs. Snyder, is limited to the amount of liability insurance protecting the estate. Accordingly, we reverse that part of the judgment which allowed the children's claim for wrongful death in an amount over and above the limits of liability insurance.

### III.

We proceed to consider Ranger's argument that section 15–12–803(3)(b), C.R.S. 1973 of the nonclaim statute violates equal protection of the laws, U.S.Const. Amend.

---

10. Similar uncertainties would attach to the liability of a personal representative for breach of fiduciary duty. Section 15–12–1005 provides:

"Unless previously barred by adjudication and except as provided in the closing statement, the rights of successors and of creditors whose claims have not otherwise been barred against the personal representative for breach of fiduciary duty are barred unless a proceeding to assert the same is commenced within six months after the filing of the closing statement."

Tolling the nonclaim statute by reason of minority or other disability would render the minor's or disabled person's claim "not otherwise barred" within the meaning of this statute.

11. Our holding does not impair, and indeed is reconcilable with, the decision in *Antonopoulos v. Telluride*, 187 Colo. 392, 532 P.2d 346 (1975). There this court held that a claimant under disability was relieved from the statutory 90 (now 180) day notice requirement of the Colorado Governmental Immunity Act, section 24–10–109(1), C.R.S. 1973 (1980 Supp.), as a condition precedent to any action brought against a public entity. The notice statute of the Governmental Immunity Act only requires "substantial compliance with the notice provisions," and "failure of substantial compliance shall be a complete *defense* to any such action." (Emphasis added.) Such statutory terminology is not the language of a jurisdictional bar. *Cf. Colorado Springs v. Colburn*, 102 Colo. 483, 81 P.2d 397 (1938) (whether circumstances establish disability excusing notice to municipality presented jury question); *Gray v. Regional Transportation District*, Colo.App., 602 P.2d 879 (1979) (public entity may be estopped from asserting noncompliance with notice requirements). Given the statutory language of the Governmental Immunity Act, it is readily apparent, as *Antonopoulos* states, that the legislature did not intend noncompliance with the notice requirement by persons under disability to constitute a jurisdictional bar to their claims:

"The defendants' support of the ruling of the trial court is based entirely on an interpretation of the Colorado Governmental Immunity Act. We find that the defendants in their analysis overlooked a very important provision of the act which leads us to our differing conclusion. It is 1971 Perm. Supp., C.R.S. 1963, 130–11–9(5) which states:

'Any action brought pursuant to this article shall be commenced within the time period provided for that type of action in Chapter 87, C.R.S. 1963 relating to limitations of actions, or it shall be forever barred.'

"Chapter 87, C.R.S. 1963 establishes the time limitation in which various actions may be commenced. Each such limitation is subject to Article 2 of that chapter, which tolls the running of the limitation periods in the event of disability. Hence, in stating the period of limitations for actions against governmental entities, the General Assembly provided for the eventuality of disability. It would be incongruous to extend the overall period in which an action could be brought, yet bar one under disability for failing to comply with the 90-day notice requirement. Such an anomaly was clearly not within the contemplation of the legislature in enacting the Immunity Act." 187 Colo. at 398–99, 532 P.2d at 350.

In contrast to the Governmental Immunity Act, the structure, purpose and language of the nonclaim statute, as well as its relationship to other provisions of the Colorado Probate Code, point up its jurisdictional character and reveal legislative intent to prohibit the filing of claims, which arise at or after the death of the decedent, beyond the four month period prescribed in section 15–12–803(2)(b).

XIV; *Colo. Const.* Art. II, Sec. 25,[12] because it conditions the liability of the decedent's estate upon the presence or absence of liability insurance. Section 15–12–803(3)(b) carves out the following exception to the nonclaim statute:

"Nothing in this section affects or prevents:

\* \* \* \* \* \*

(b) To the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which he is protected by liability insurance."

For purposes of equal protection analysis, it matters not whether the statutory classification is viewed as a distinction between insured and uninsured estates or insured and uninsured claims. In both instances the effect of the statute is identical: a claim arising at or after the decedent's death and filed more than four months thereafter is excluded from the nonclaim bar up to the amount of liability insurance covering the claim.

▪ In the absence of either a suspect classification or a fundamental right, a statute satisfies equal protection scrutiny if its classification bears a reasonable relationship to a legitimate state purpose. *See, e. g., Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976); *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *People v. Chavez,* Colo., 629 P.2d 1040 (1981); *Winkler v. Dept. of Health,* 193 Colo. 170, 564 P.2d 107 (1977). Section 15–12–803(3)(b) involves neither a suspect classification nor a fundamental right. Thus, for equal protection purposes, no more is constitutionally required than that the statutory differential between claims protected by liability insurance and those unprotected by such insurance be reasonably related to a legitimate governmental purpose.

The state has a legitimate interest in providing legal redress to those who have been damaged by the tortious conduct of another resulting in the death of a spouse, parent or child. The statutory action for wrongful death evinces this governmental interest. Sections 13–21–201 and 202, C.R.S. 1973. The state also has a legitimate interest in providing for the early and orderly distribution of a decedent's assets. *See Estate of Randall v. Colorado State Hospital, supra.* The nonclaim statute effectuates this purpose.

▪ A liability insurance contract, although an asset of an estate, creates a contractual right which vests only when a liability claim against the insured ripens into judgment. *Price v. Sommermeyer,* 195 Colo. 285, 577 P.2d 752 (1978). Tort claims filed against an estate under the liability insurance exception "do not affect the interests of the beneficiaries under the estate and thus present no obstacle to an orderly and exact administration of the estate." *Sommermeyer v. Price, supra,* 198 Colo. at 552, 603 P.2d at 138. Recovery in such instances is limited to the liability insurance proceeds. Neither the claims of general creditors nor the interest of heirs and devisees will be adversely affected by the liability insurance exception.

▪ Section 15–12–803(3)(b), without interfering with the speedy distribution of the assets of the estate, permits those who have been harmed by the tortious conduct of the decedent to bring an action that, in the absence of liability insurance, would jurisdictionally be barred under the provisions of the nonclaim statute. The statutory classification between claims and estates protected by liability insurance and those that are not is reasonable and does not violate equal protection of the laws.

## IV.

We now consider Mrs. Snyder's contention that the Ranger policy does not limit her wrongful death claim to $100,000. Her

---

**12.** The right to equal protection of the laws is included within the due process clause of the Colorado Constitution. *E. g., People v. Chavez,* Colo., 629 P.2d 1040 (1981); *Heninger v. Charnes,* Colo., 613 P.2d 884 (1980); *People v. Max,* 70 Colo. 100, 198 P. 150 (1921).

argument proceeds as follows: the limit of liability for Coverage D (Single Limit Bodily Injury Liability Including Passengers) is $1,000,000; the endorsement fixes this limit at $100,000 for bodily injury or death to passengers; therefore, the coverage for non-passengers, such as Mrs. Snyder and her children, remains at $1,000,000. This argument, however, originates from a faulty assumption, namely, that the pecuniary loss sustained by a wrongful death claimant is damage which, for purposes of coverage, is severable from and independent of the death limit of $100,000 per passenger. The plain terms of the policy refute this assumption.

 Although a claim for wrongful death "is separate and distinct from the action which the deceased would have for personal injuries had he survived," *Fish v. Liley*, 120 Colo. 156, 160, 208 P.2d.930, 932 (1949), the character of the action does not alter the nature of the risks covered by the insuring agreement. In the absence of an ambiguity, an insurance contract must be given effect according to the ordinary and accepted sense of the terms contained therein. *E. g., Martinez v. Hawkeye-Security Insurance Co.*, 195 Colo. 184, 576 P.2d 1017 (1978); *Equitable Life Assurance Society v. Hemenover*, 100 Colo. 231, 67 P.2d 80 (1937). There is no ambiguity here with respect to liability risks insured against or the liability limits for those risks.

The risks encompassed by Coverage D are: (1) "bodily injury, sickness or disease, including death," to a passenger caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft; and (2) "bodily injury, sickness or disease, including death" sustained by any person, excluding passengers, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft. Considering the myriad hazards associated with the operation of aircraft, it is not unreasonable for an insurance carrier to distinguish its liability exposure between, on the one hand, an aircraft accident causing injury, sickness or death to passengers, and, on the other hand, an aircraft accident causing injury, sickness or death to other persons.

 Clearly, neither Mrs. Snyder nor her children sustained "bodily injury, sickness or disease, including death" arising out of the accident of March 10, 1978. The factual and legal basis of the Snyders' claim against the Daigle estate is that the decedent, Harry P. Daigle, negligently caused Mr. Snyder's death while he was a passenger in the aircraft operated by Daigle. It is this risk—the death of a passenger in an airplane accident—to which the liability coverage is directed and for which Ranger must provide liability protection to the Daigle estate. The policy endorsement distinctly fixes the company's limit of liability for damages resulting from the death of a passenger at $100,000.[13] Therefore, pursuant to section 15–12–803(3)(b), C.R.S. 1973, the wrongful death claim of Mrs. Snyder and her children against the Daigle estate is limited to $100,000.

The judgment is affirmed with respect to the constitutionality of section 15–12–803(3)(b), C.R.S. 1973, and the limitation of the wrongful death claim to $100,000. It is reversed with respect to the tolling of the nonclaim statute, section 15–12–803(2), C.R.S. 1973, by reason of the children's minority.

LEE, J., does not participate.

13. The district court interpreted the phrase "each person" in the endorsement as a reference to a passenger on the aircraft and not to the individual wrongful death claimants. The Snyders do not contest this interpretation but rather insist that the endorsement is not applicable to them because of their status as "non-passengers."