Gerald A. RAUSCHENBERGER and
Terry Rauschenberger, Petitioners,

v.

Dr. Paul RADETSKY, Respondent.

No. 85SC438.

Supreme Court of Colorado,
En Banc.

Nov. 2, 1987.

Rehearing Denied Nov. 30, 1987.

Podoll & Podoll, P.C., Richard B. Podoll, Denver, for petitioners.

Johnson, Mahoney & Scott, P.C., Collie E. Norman, Denver, for respondent.

KIRSHBAUM, Justice.

In *Rauschenberger v. Radetsky*, 712 P.2d 1089 (Colo.App.1985), the Court of Appeals affirmed the trial court's entry of summary judgment in favor of the respondent, Dr. Paul Radetsky, in a wrongful death action brought by the petitioners, Gerald A. Rauschenberger and Terry Rauschenberger, sons and heirs of the decedent, Elton H. Rauschenberger (Rauschenberger).[1] The Court of Appeals concluded

---

1. The estate of the decedent and the decedent's former spouse, Ada Mae Rauschenberger, also participated as plaintiffs in the wrongful death claim and a medical malpractice claim. The malpractice claim was not a survival action, but rather alleged direct injury to the plaintiffs. The trial court dismissed the medical malpractice claim and ruled that the estate and the

that the claim was barred by the limitation provisions of section 13–21–204, 6 C.R.S. (1985 Supp.), and rejected the petitioners' argument that the statute should be tolled to reflect their inability to discover at any early date the alleged negligence which formed the basis of the wrongful death claim. Having granted certiorari to review that determination,[2] we reverse and remand the case to the Court of Appeals with instructions to remand the case to the trial court for further proceedings consistent with the views expressed herein.

## I

Between October 1962 and April 1981, Radetsky served as Rauschenberger's personal physician. During that time Radetsky treated Rauschenberger for obesity, depression, and other ailments; the treatment included prescriptions of several medications. On June 2, 1981, Rauschenberger died. On May 31, 1983, the petitioners filed this action, which included a claim that Radetsky wrongfully caused Rauschenberger's death by improperly prescribing medication and by failing to diagnose and treat drug and alcohol addiction.

Radetsky filed a motion to dismiss and for summary judgment, contending that the wrongful death claim was barred by the applicable statute of limitation, section 13–21–204, 6 C.R.S. (1985 Supp.), which provides:

> **Limitation of actions.** All actions [seeking damages for death by negligence] shall be brought within two years after the commission of the alleged negligence resulting in the death for which suit is brought or within one year after the death for which suit is brought, whichever is later.

The trial court found that the last day Radetsky had treated Rauschenberger was April 25, 1981. Concluding that April 25, 1981, was the last date upon which Radetsky could have committed negligence, the

former spouse lacked standing to assert any wrongful death claim. Neither of these determinations are germane to the question upon which we granted certiorari.

trial court ruled that the wrongful death claim was barred because brought more than one year after the death and more than two years after the commission of the alleged negligence resulting in the death.

The petitioners contended that the statute of limitation for wrongful death claims begins to run on the date when the damage or injury arising from the alleged negligence becomes known or by reasonable care could have been discovered and that they did not become aware of Radetsky's alleged negligence until consulting another physician after Rauschenberger's death. Referring to affidavits filed by Rauschenberger's former spouse and by one of his sons, which stated that in 1975 they had approached Radetsky and expressed concern that prescribed medications and alcohol were having an adverse effect on Rauschenberger's physical and psychological health, the trial court concluded that they "knew or by the exercise of reasonable care could have discovered the commission of the alleged negligence at that time." In affirming the trial court's rulings, the Court of Appeals held that where the "act of negligence resulting in death occurred two years prior to the filing of suit, the one-year limitation period ... [was] applicable and [began] to run on the date of the death of the decedent." *Rauschenberger v. Radetsky*, 712 P.2d 1089, 1090 (Colo.App. 1985).

## II

The petitioners in essence contend that a discovery rule is applicable to the wrongful death statute of limitation. The "discovery rule," generally, is the doctrine that a claim for relief does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the conduct upon which the claim is based. *Comstock v. Collier*, 737 P.2d 845 (Colo.1987); *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970). Radetsky contends that a dis-

**2.** The Court of Appeals also affirmed the trial court's judgment dismissing the medical malpractice claim. We do not review that determination; our review is limited to the narrow question upon which we granted certiorari.

covery rule is inapplicable to wrongful death claims and that, even if such rule were applicable, it is clear that any wrongful death claim should be barred under the facts of this case.[3]

■ The statute of limitation in effect when a cause of action accrues governs the time within which a civil action must be commenced. *Comstock v. Collier*, 737 P.2d 845; *Mishek v. Stanton*, 200 Colo. 514, 616 P.2d 135 (1980). Here, the relevant statute is section 13–21–204, 6 C.R.S. (1985 Supp.), enacted in 1979. In *Crownover v. Gleichman*, 194 Colo. 48, 574 P.2d 497 (1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978), this court addressed the issue of when a wrongful death claim accrued under the pre–1979 version of the wrongful death statute of limitation. That statute, section 13–21–204, provided as follows:

> All actions [seeking damages for death by negligence] shall be brought within two years from the commission of the alleged negligence resulting in the death for which suit is brought.

Section 13–21–204, 6 C.R.S. (1973). In *Crownover* we concluded that the language of that statute plainly provided that the period of limitation began to run not at the time of death but at the time of discovery of the alleged negligence. We specifically noted that the physician's allegedly negligent failure to detect the presence of cancer when examining X-rays in 1971 was known or reasonably should have been known in April of 1972, when the decedent underwent surgery and cancer was discovered, and that, because the discovery of the alleged negligence necessarily must have occurred more than two years prior to the filing of the wrongful death claim in No-vember of 1974, the action was barred. *Crownover v. Gleichman*, 194 Colo. at 51, 574 P.2d at 499. Thus, the decision expressly recognized that the discovery rule was applicable to Colorado's wrongful death statute of limitation. The decision left open, however, the possibility that, where the allegedly negligent act occurred more than two years prior to death, a wrongful death claim could be barred before the death occurred. *Crownover v. Gleichman*, 194 Colo. at 51, 574 P.2d at 499 (Carrigan, J., dissenting).

In 1979, the General Assembly amended the wrongful death statute of limitation. As then amended, the statute retained the provision authorizing the filing of a wrongful death claim within two years of the commission of the alleged negligence resulting in death, and also permitted the filing of such a claim "within one year after the death for which suit is brought, whichever is later." Act approved June 7, 1979, ch. 134, § 1, 1979 Colo.Sess.Laws 615. Relevant legislative history reveals that at the time the amendments to the wrongful death statute of limitation were proposed, the General Assembly was well aware of the *Crownover* decision, specifically referring to the decision by name. The addition of the one-year filing period following death apparently was intended to obviate the possibility that a claim for relief based on wrongful death might be barred before the claimant ever had an opportunity to file the claim. *E.g., Hearing on H.B. 1439 Before the Senate Judiciary Comm.*, 52d Gen. Assembly, 1st Reg. Sess. (April 17, 1979); *Hearing on H.B. 1439 Before the House Judiciary Comm.*, 52d Gen. Assembly, 1st Reg. Sess. (Feb. 27, 1979).

---

**3.** The medical malpractice statute of limitation in effect during the relevant time period, § 13–80–105, 6 C.R.S. (1985 Supp.), allowed the filing of an action "within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury." In *Mastro v. Brodie*, 682 P.2d 1162 (Colo.1984), we held that the limitation period began to run when the claimant reasonably was on notice concerning the nature and extent of injury and that the injury resulted from the wrongful conduct of another. Section 13–80–105 also contained a repose provision, barring suits brought more than three years after the act or omission in question, with the exception of suits involving knowing concealment, unauthorized foreign objects left in the patient's body or minor claimants less than six years of age. In *Austin v. Litvak*, 682 P.2d 41 (Colo.1984), a plurality of this court concluded that negligent misdiagnosis claims must also be excepted from application of the three-year repose provision to satisfy constitutional standards.

■ Even in the absence of demonstrative legislative history, the General Assembly is presumed cognizant of the judicial precedent in a particular area when it enacts legislation in that area. *Thompson v. People,* 181 Colo. 194, 510 P.2d 311 (1973); *Smith v. Miller,* 153 Colo. 35, 384 P.2d 738 (1963); *People v. Mathes,* 703 P.2d 608 (Colo.App.1985). When a statute is amended, the judicial construction previously placed upon the statute is deemed approved by the General Assembly to the extent that the provision remains unchanged. *E.g., In re Estate of Daigle,* 634 P.2d 71 (Colo.1981); *Creacy v. Industrial Comm'n,* 148 Colo. 429, 366 P.2d 384 (1961); § 2–4–208, 1B C.R.S. (1980). Where the General Assembly, in amending section 13–21–204, added language which prevented the running of the statute of limitation prior to death, but did not specifically address the *Crownover* application of the discovery rule to wrongful death actions, the conclusion is compelling that the General Assembly did not intend to restrict that part of the *Crownover* holding dealing with the discovery rule. *See, e.g., Ritter v. Aspen Skiing Corp.,* 519 F.Supp. 907 (D.Colo.1981) (citing *Crownover* and concluding that statute of limitation for wrongful death claims begins to run on date damage arising from alleged negligence becomes known or by reasonable care could have been discovered); *Weedin v. United States,* 509 F.Supp. 1052 (D.Colo. 1981) (concluding that nothing in 1979 amendment to section 13–21–204 indicates that discovery rule no longer applies to wrongful death claim).[4]

■ In view of this history of judicial and legislative decision-making, we conclude that the discovery rule remains applicable to wrongful death claims. Under this rule, a wrongful death claim must be filed within two years from the date the alleged negligence resulting in death is discovered, or in the exercise of reasonable diligence should have been discovered, or within one year from such death, whichever event is later. The contrary conclusion of the Court of Appeals is, therefore, reversed.

■ In this case, the trial court concluded as a matter of law that the petitioners knew of or by the exercise of reasonable care should have discovered the commission of the alleged negligence in 1975 when one of the petitioners expressed concerns to Radetsky that he might be prescribing medication improperly for Rauschenberger. However, the question of whether a party discovered or reasonably should have discovered an injury caused by another's negligence in most circumstances involves determination of questions of fact to be made by the fact-finder rather than by the trial judge. *E.g., Mastro v. Brodie,* 682 P.2d 1162 (Colo.1984); *Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603 (1970); *Davis v. Bonebrake,* 135 Colo. 506, 313 P.2d 982 (1957).

Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." C.R.C.P. 56(c). The burden is on the moving party to establish that no genuine issue of fact exists, and any doubts in this regard must be resolved against the moving party. *E.g., Southard v. Miles,* 714 P.2d 891 (Colo. 1986); *Tapley v. Golden Big O Tires,* 676 P.2d 676 (Colo.1983); *Ginter v. Palmer & Co.,* 196 Colo. 203, 585 P.2d 583 (1978).

■ In this case, the petitioners allege that they relied upon assurances by Radetsky that he was administering proper treatment to Rauschenberger. However, the record also discloses that in late 1980 Rauschenberger was examined by a second physician at the insistence of one of the petitioners. The evidence as to when the petitioners discovered the alleged negligence

---

**4.** *Cf.* § 13–80–102(1)(d), 6 C.R.S. (1986 Supp.) (all actions for wrongful death shall be commenced within two years of accrual and not thereafter); § 13–80–108(2), 6 C.R.S. (1986 Supp.) (a cause of action for wrongful death accrues on the date of death). The 1986 amendments apply to claims for relief arising on or after July 1, 1986. Act approved May 23, 1986, ch. 114, § 23, 1986 Colo.Sess.Laws 695, 706. Our decision here necessarily applies only to those claims arising before July 1, 1986.

resulting in Rauschenberger's death is certainly conflicting. Therefore, the issue should be resolved by the finder of fact, and the entry of summary judgment was not appropriate.

The judgment is reversed, and the case is remanded to the Court of Appeals with directions to remand the case to the trial court for further proceedings consistent with the views expressed in this opinion.

ERICKSON, J., specially concurs.

ROVIRA, J., dissents.

VOLLACK, J., does not participate.

ERICKSON, Justice, specially concurring:

The difference in the interpretation of *Crownover v. Gleichman*, 194 Colo. 48, 574 P.2d 497 (1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978), and *DeCaire v. Public Serv. Co.*, 173 Colo. 402, 479 P.2d 964 (1971), reflected in the majority and dissenting opinions requires an explanation. The *Crownover* and *DeCaire* cases lack clarity as demonstrated by the strong dissent from Justice Carrigan in *Crownover*. *Crownover* states that the wrongful death action was commenced "more than two years from the 'discovery' of the alleged negligence," implying the court's adoption of the discovery doctrine. *Crownover*, 194 Colo. 48, 51, 574 P.2d 497, 499 (1977) (citing *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970)). In my view, Justice Kelley who authored *Crownover*, *DeCaire*, and *Owens*, interpreted the Colorado wrongful death statute to include the tolling of the statute of limitations until the negligence was discovered. The General Assembly accepted Justice Kelley's interpretation of the wrongful death statute in the amendments to the statute of limitations that were made subsequent to the announcement of *Crownover*.

Accordingly, I specially concur in the majority opinion.

ROVIRA, Justice, dissenting:

I respectfully dissent.

The majority holds that a discovery rule is applicable to wrongful death claims, and therefore a wrongful death claim must be filed within two years from the date the alleged negligence resulting in death is discovered, or in the exercise of reasonable diligence should have been discovered, or within one year from such death, whichever is later. Maj. op. at 643. The plain language of the statute admits no such discovery rule. Moreover, the legislative history of the statute and the judicial precedent relied upon by the majority do not support the majority's construction of the statute and the conclusion arrived at.

I.

The statute of limitation applicable to the present case provides that:

All actions [seeking damages for death by negligence] shall be brought within two years from the commission of the alleged negligence resulting in the death for which suit is brought or within one year after the death for which suit is brought, whichever is later.

§ 13–21–204, 6 C.R.S. (Supp.1985).

We must give effect to the statute as written, and "[f]orced, subtle, strained or unusual interpretation should never be resorted to where the language is plain, its meaning is clear, and no absurdity is involved." *Harding v. Industrial Commission*, 183 Colo. 52, 59, 515 P.2d 95, 98 (1973).

Our earlier opinions interpreting predecessor wrongful death statutes consistently held that the statute of limitations begins running, at the latest, when the decedent suffers the injury that ultimately causes his death. In those cases, we made no reference to any discovery rule. *See Ferrari v. District Court*, 185 Colo. 136, 522 P.2d 105 (1974) (dictum); *DeCaire v. Public Service Co.*, 173 Colo. 402, 479 P.2d 964 (1971); *Franzen v. Zimmerman*, 127 Colo. 381, 256 P.2d 897 (1953); *Fish v. Liley*, 120 Colo. 156, 208 P.2d 930 (1949).

The first application of the discovery rule to the wrongful death statute of limitations in Colorado came in the court of appeals' opinion in *Crownover v. Gleichman*, 38

Colo.App. 96, 554 P.2d 313 (1976), *aff'd,* 194 Colo. 48, 574 P.2d 497 (1977):

> [W]e hold that the statute of limitations in a wrongful death action begins to run on the date the damage or injury arising from the commission of the alleged negligence from which death later results becomes known or by reasonable care could have been discovered.

38 Colo.App. at 98, 554 P.2d at 315.

A close reading of that opinion reveals, however, that the discovery rule the court announced was an unjustified expansion of the holdings in the cases cited above. The issue before the court of appeals was whether the decedent's initial injury or his death started the running of the statute of limitations: on the facts before it, it was irrelevant whether the limitations period began running at the time of the decedent's initial injury or only at his discovery thereof. The court's invocation of a discovery rule was therefore unnecessary, and it plainly was at odds with our decision in *DeCaire.*

We granted certiorari in *Crownover* on the limited issue of:

> [W]hether the statute of limitations, section 13–21–204, runs from the date of death or from the wrongful act, neglect, or default which resulted in the death.

In answering that question we relied on our prior decisions and noted that if an action is not filed within two years after the commission of the alleged negligence which resulted in death, then the action is barred, *Franzen v. Zimmerman,* 127 Colo. 381, 256 P.2d 897 (1953). We also pointed out that in *DeCaire v. Public Service Co.,* 173 Colo. 402, 479 P.2d 964 (1971), we held that the statute of limitations begins to run when the claimant has been injured or damaged by the alleged negligence.

After noting that the physician's negligent failure to diagnose the victim's cancer in *Crownover* became known when the deceased later underwent surgery but the complaint was not filed until more than two years after the "discovery" of the negligence, we concluded that:

> [W]ithout torturing the language of the statute, it is difficult to see how one

could interpret the language of the statute to mean anything other than what it says—"all actions ... shall be brought within two years from the commission of the alleged negligence resulting in the death for which suit is brought." ...

194 Colo. at 51, 574 P.2d at 499, quoting § 13–21–204, 6 C.R.S. (1973). The majority tortures the language of the statute and misconstrues our opinion in *Crownover* when it states that in *Crownover* we concluded that the period of limitations began to run not at the time of death but at the time of discovery of the alleged negligence. Maj. op. at 642.

The "language" to which *Crownover* referred is identical to the language we are asked to interpret today. The present statute states, quite simply, that the limitations period begins running on the date of the "commission of the alleged negligence"; it makes no reference whatsoever to the plaintiff's discovery of that negligence.

The legislature has demonstrated its ability to include a discovery rule in a statute of limitations, as is evident from the statute that requires that certain malpractice suits be:

> [I]nstituted within two years after the [plaintiff] discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury.

§ 13–21–204, 6 C.R.S. (Supp.1985). *See also* § 13–80–109, 6 C.R.S. (1973) ("Bills for relief on the ground of fraud shall be filed within three years after the discovery by the aggrieved party of the facts constituting such fraud, and not afterward."). Had the legislature intended that a similar rule apply to wrongful death claims, it surely would have expressed that intent by adopting exact and appropriate language. I thus have trouble understanding how the statute can be read except as commencing the limitation period on the date of the defendant's commission of the negligence.

As we explained in *DeCaire,* negligence is not actionable until it causes some harm to the victim; as a consequence, "negligence" as used in the statute includes not only the wrongful conduct by the defendant, but also some injury arising therefrom. 173 Colo. at 407, 479 P.2d at 966.

The statute of limitations begins running, therefore, when the defendant's alleged wrongful act or omission causes some injury to the victim which later results in death.

That reading is consistent with the operation of the wrongful death statute, which permits recovery:

> When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof....

§ 13–21–202, 6 C.R.S. (1973). The statute requires that the cause of the death be some conduct for which the decedent could have brought suit had he lived. Similarly, the statute of limitations commences running at the time at which the decedent could have brought suit had he lived.

## II.

The majority does not explain its interpretation of the statute directly, but instead relies on the purported affirmation of the discovery rule in *Crownover*. As explained above, I do not agree that *Crownover* recognized that a discovery rule is applicable to the wrongful death statute,[1] and we should attribute no more meaning to the *Crownover* decision than was necessary to its result.

Moreover, the majority relies in part on its perception that the legislature understood *Crownover* as applying a discovery rule. When the legislature amended the limitations period to permit the filing of suit up to one year following the victim's death, it did not change that part of the statute we interpreted in *Crownover*, and thus was apparently satisfied with our reading. I agree, in principle, that the legislature's approval of settled case law may be inferred from its choice not to amend the relevant portion of the statute of limitations. *See Crownover*, 194 Colo. at 51, 574 P.2d at 499; *Herbertson v. Russell*, 150 Colo. 110, 117, 371 P.2d 422, 426 (1962). In this case, however, we do not need to resort to such rules to discern the legislature's intent: its intent is expressed plainly in the statute itself.

Moreover, the legislature's understanding of *Crownover* was apparently different from the majority's. The sponsor of the amendment, Representative Speltz, explained:

> There are several cases that there have been different decisions on, in both the Supreme Court, and the Court of Appeals. And the problem being that there is now a case in Colorado Springs where the lady had to sue for the wrongful death of her husband before he died because the original statute says that you cannot sue after two years after the commission of the alleged negligence.
>
> ....
>
> ... the choice we have is to go on one side and say: Okay, you have a certain amount of time, period, and leave it to the plaintiffs to bring it up; or you can go somewhere in the middle, which I

---

1. In *DeCaire v. Public Service Co.*, 173 Colo. 402, 479 P.2d 964 (1971), we held that the statute of limitations begins to run when the decedent suffered the injury from which death resulted. Justice Carrigan dissented from the majority opinion of the supreme court in *Crownover*, and Judge Smith dissented from the majority opinion in the court of appeals. Both understood the respective majorities to follow *DeCaire*, which clearly invoked no discovery rule.

On the other hand, the majority in *Crownover* discussed the facts and concluded:

> In the instant case the injury or damage from Dr. Kennedy's alleged negligence was known or should have been known on April 26, 1972, when the deceased underwent surgery and the doctors discovered large areas of cancerous tissue in her chest. It was not until Novem-

ber 13, 1974, that Dr. Kennedy was served with a summons, more than two years from the "discovery" of the alleged negligence. *See Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970).

Even if the *Crownover* majority meant to invoke the discovery rule its reliance on *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970), was misplaced. *Owens* applied a discovery rule to medical malpractice claims. Its holding was based on the legislature's use of the undefined term "such cause of action accrued" to commence the running of the statute of limitations, and our interpretation of that language as adopting a discovery rule relied heavily on our conclusion that "the word 'accrued' should be equated with the 'discovery rule'". 172 Colo. at 530, 474 P.2d at 606.

hope we've done, and say two years after the commission or one year after the death.

*Hearing on H.B. 1439 Before the House Judiciary Committee*, 52d Gen. Assembly, 1st Reg.Sess. (Feb. 27, 1979). The majority mentions that the legislature referred to the *Crownover* case by name, but even then former Representative Safran, explaining the House amendment, was unclear about *Crownover's* holding:

> What happened in the Crownover case that you were talking about is that a person did bring an action during the time that he had available for personal injury, but died more than two years after the date of the injury, and they didn't allow his family to recover in a wrongful death action.
>
> . . . .
>
> ... [the] Speltz [bill] says two years from the date of the negligent act or one year from the date of death, whichever occurs later.

*Hearing on H.B. 1439 Before the Senate Judiciary Committee*, 52d Gen. Assembly, 1st Reg.Sess. (April 27, 1979). In any event, nothing in the legislative history indicates that the legislature had a discovery rule in mind, or that it believed *Crownover* applied such a rule.

Accordingly, I respectfully dissent.